### EDWARDS v. KEITH.

(Circuit Court of Appeals, Second Circuit.   January 31, 1916.)

No. 129.

1. INTERNAL REVENUE ⬀7—INCOME TAX—PROPERTY TAXABLE—"NET INCOME."

Under Act Oct. 3, 1913, c. 16, § II, div. B, 38 Stat. 167 (Comp. St. 1913, § 6321), providing that the "net income" of a taxable person shall include gains, profits, and income derived from salaries or compensation for personal services, of whatever kind and in whatever form paid, or from businesses, commerce, gains, profits, and income derived from any source whatever, a life insurance agent, whose contract entitled him to commissions of a specified percentage of the first premium of each policy and of a different percentage on subsequent renewal premiums when the same should be paid, is liable to pay the income tax on commissions on renewals of policies issued before the act was adopted, which were not paid until thereafter.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ⬀7.

For other definitions, see Words and Phrases, First and Second Series, Net Income.]

2. INTERNAL REVENUE ⬀7—INCOME TAX—TREASURY REGULATIONS:

The instruction of the Treasury Department requiring return to be made of fees or emoluments for services charged for, but not collected, if good and collectible, cannot change the requirement of the statute that the income tax shall be based on the income arising or accruing during the calendar year.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ⬀7.]

Appeal from the District Court of the United States for the Eastern District of New York.

Action by Charles Jerome Edwards against Henry P. Keith, as collector, to recover part of the income tax paid by plaintiff.   From a

judgment sustaining a demurrer to the amended complaint and dismissing the complaint on its merits, plaintiff appeals. Affirmed.

This cause comes here upon appeal from a judgment sustaining a demurrer to the amended complaint and dismissing said complaint on the merits. The opinion of Judge Chatfield will be found in 224 Fed. 585.

Jones, McKinny & Steinbrink, of Brooklyn, N. Y. (George W. Wickersham, of New York City, Chas. A. Woods, of Long Island City, N. Y., and Meier Steinbrink, of Brooklyn, N. Y., of counsel), for plaintiff in error.

Melville J. France, U. S. Atty., of Brooklyn, N. Y., for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge.   [1] The action is brought to recover part of the income tax for 1913 paid by plaintiff. The statute (Act Oct. 3, 1913, 38 Stat. 114, 166) provides for the levying an individual tax on those liable to pay "upon the entire net income arising or accruing from all sources in the preceding calendar year." For the year 1913 the period is 10 months only, the statute taking effect March 1, 1913. The act thus defines net income:

"That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise, or descent." Division B of section II.

Plaintiff is a life insurance agent, employed by an insurance company under written contracts to procure applications for assurance on the lives of individuals. As compensation for his services the insurance company is obligated to pay him a certain commission on the first premium paid by the assured when the policy is issued. It is further obligated, as the assured pays subsequent renewal premiums for a certain number of years, to pay to plaintiff a stated commission on each of such renewal premiums. It is with these renewal premiums, or rather with the commissions paid thereon that this cause is concerned. Plaintiff's brief thus states the controversy.

"A single question is presented by the appeal, namely: whether or not the commissions payable to complainant under the contracts with the Assurance Society annexed to the complaint, upon renewal premiums paid on policies obtained through the instrumentality of appellant prior to March 1, 1913, but which commissions were not actually paid to and received by complainant until after March 1, 1913, and between that date and December 31, 1913, constitute a part of 'the entire net income' of complainant 'arising or accruing from all sources' between those dates."

An elaborate argument is presented on behalf of the plaintiff in error, based in part upon provisions in the contracts whereby the com-

pany agrees to loan money to the agent to the amount of certain expected commissions on renewals, and the agent agrees to render assistance in the collection of renewal premiums; but the question seems to us a very simple one and one absolutely determined by the provision in all the contracts that "commissions shall accrue only as the premiums are paid in cash." That the work for which the compensation is paid was done in some prior year seems to us unimportant.

If, as counsel retained for the purpose, a lawyer argues a cause for a client before the Court of Appeals in October, 1915, having received a retainer in August and his work being completed with the argument, and the cause is decided in December and his client pays him in February, 1916, we cannot see why he should not include his retainer in his income return for 1915 and the money paid him for argument in his return for 1916, although in that year (1916) he did nothing—did not even send in a bill, having done that in December, 1915.

If, as a reward for long and faithful service an industrial corporation votes to one of its employés, who retires from active work, an annual pension, we do not see why all instalments of that pension paid in each calendar year are not, under the statute, income for that year.

If an agent for a life insurance company does a particular job, e. g., persuades John Doe to insure in the company on July 1st, 1915, and receives as part compensation for that work a certain sum when Doe pays his first premium in July, 1915, surely he includes that in his income return for 1915. That certainly is income. If under this arrangement with the company he receives a further sum of money as compensation for the same job in July, 1916, when John Doe pays his second premium, we cannot see why that is not income for 1916—in the ordinary sense of the word. Why it is not within the language of the act "income arising or accruing in the calendar year 1916" and "derived from personal services" we are entirely at a loss to understand. The statute does not provide that the "personal services," compensation for which is to be considered income, must be rendered in the same year in which the compensation is received.

It may be noted that, although fully earned by work already done, there is no certainty that the sum conditionally promised for an ensuing year will ever be paid or will accrue or come due; John Doe may die within the first year, or at its expiration may refuse to renew his policy in which event the company is not obligated to pay its agent anything beyond the amount already paid him; the obligation to pay does not arise until John Doe actually pays his renewal premium in cash.

There is nothing in the opinion in the Matter of Wright (D. C.) 151 Fed. 361, which we affirmed in 157 Fed. 544, 85 C. C. A. 206, 18 L. R. A. (N. S.) 193, which at all conflicts with the views above expressed.

[2] Reference is also made to certain instructions of the Treasury Department:

"A person receiving fees or emoluments for professional or other services, as in the case of physicians, or lawyers, should include all actual receipts for services rendered in the year for which return is made, together with all unpaid accounts, charges for services or contingent income due for that year, if good and collectible." Form 1040, instruction 14; form 1041, instruction 12.

This form may be appropriate enough to give the department full information about an individual's earnings in any particular year so as to enable its officers to check up with accuracy some return of a future year, when his hope of being paid what he has earned finds fruition. But no instructions of the Treasury Department can enlarge the scope of this statute so as to impose the income tax upon unpaid charges for services rendered and which, for aught any one can tell, may never be paid. To take the illustration given above, the charge for the argument in the Court of Appeals, unpaid on December 31, 1915, could not be included as taxpaying income for 1915, because it was not paid in that year and the client might die insolvent on January 1, 1916; but as soon as it is paid it becomes taxpaying income of the year in which such payment is made, although it was made for services performed in a prior year. The phraseology of form 1040 is somewhat obscure; perhaps it means that there shall be included actual receipts (a) for services rendered in the year for which return is made and (b) for unpaid accounts, or charges for services rendered in former years, and paid in the year for which return is made. But it matters little what it does mean; the statute and the statute alone determines what is income to be taxed. It taxes only income "derived" from many different specified sources; one does not "derive income" by rendering services and charging for them.

The judgment is affirmed.