WOODS v. LEWELLYN, Internal Revenue Collector (two cases).

(Circuit Court of Appeals, Third Circuit. June 18, 1918.)

Nos. 2273, 2274.

1. INTERNAL REVENUE ⚖7—INCOME TAX LAW—COMMISSIONS OF LIFE INSURANCE AGENT—"INCOME."

Income Tax Act Oct. 3, 1913, § 2, par. A, subd. 1, taxing entire net "income" arising from all sources in the preceding calendar year, and declaring in paragraph B, such income shall include gains, profits, or incomes from salaries, wages, or compensation for personal services of whatever kind, etc., taxes commissions of general life insurance agent derived from renewal premiums on policies obtained by him and accepted in some earlier year.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. INTERNAL REVENUE ⚖4—FEDERAL INCOME TAX LAW—RETROACTIVE EFFECT.

The federal Income Tax Act, though passed October 3, 1913, could tax income from March 1st of that year.

3. INTERNAL REVENUE ⚖25—FEDERAL INCOME TAX—TIME FOR ASSESSMENT—"FALSE."

Under Income Tax Act Oct. 3, 1913, § 2, par. E, assessment of tax for 1913, in May, 1915, was in time if the taxpayer's return was "false," which evidently does not mean "fraudulent," but merely untrue or incorrect.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False.]

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suits by Edward A. Woods against C. G. Lewellyn, Collector of Internal Revenue, etc. To review judgments for defendant, plaintiff brings error. Affirmed.

Charles A. Woods, of Pittsburgh, Pa., for plaintiff in error.

E. Lowry Humes, U. S. Atty., and B. B. McGinnis, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In these suits the plaintiff, Edward A. Woods, seeks to recover income taxes paid under Act Oct. 3, 1913, c. 16, 38 Stat. 114; one suit being for the 10 months preceding December 31, 1913, and the other, for the year 1914. Both suits were heard on the government's demurrer, and the principal question is the same in each case, namely, whether the tax could lawfully be collected. For each period the collector's assessment was on a larger sum than Woods returned as taxable, but his return (while asserted to have been "false," because not correct) is not charged to have been "fraudulent." He made no concealment of the facts, but appended an explanatory note to the return, containing complete information concerning the money now in question, although the note also insisted that the money was not taxable. The government's position therefore is that the return was not correct, and was therefore "false"; the reason being its failure to include money that should have been there.

The controversy concerns commissions received by Woods during the two periods in question on renewal premiums paid by policy holders in the Equitable Life Assurance Society, and his right to the commissions rests upon three contracts between himself and the society, dated in March, 1896, October, 1899, and November, 1906. For present purposes, they are essentially alike. Since, and probably before, the first of these dates, Woods was one of the society's general agents, having a defined territory, and empowered to appoint subordinates; he was obliged to pay part of the expenses, and his compensation was measured by fixed percentages of the premiums that were actually paid on policies obtained through him and accepted by the society. In each of the returns now in question, he claims to be allowed certain expenses incurred before March 1, 1913.

[1] In each suit the important question is whether the act of 1913 taxes as income an agent's commissions that were actually received by him within the taxing period, if these commissions were derived from renewal premiums paid on policies that were obtained by him and accepted by the society in some earlier year. In our opinion, the answer is that the act does tax money thus received; the reason being that such money is "income" within the period during which it came into the agent's hands. The act (section 2, par. A, subd. 1) lays a tax on "the entire net income arising or accruing from all sources during the preceding calendar year," and goes on to declare in paragraph B

that such "net income　*　*　*　shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or" (evidently in order to include by a drag-net clause any money that might have escaped even the sweeping words just quoted) "gains or profits and income derived from any source whatever.　*　*.　*"　The commissions in controversy appear to us to be embraced by this widely inclusive language.　No doubt they were earned by work done and money spent in the earlier years; the agent's work was complete when he obtained the application and the society issued the policy; his right to commissions on future renewals came then into being, and he himself was required to do no more.　He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made how much the rest would be, and in no event could he receive it except in annual instalments.　Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only.　The insured might die before a given renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commissions perished.　The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should be made he had no collectible claim against the society.　He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent.　The act taxes money, or its equivalent, or its representative, and a contingent right such as this is not "income" in the sense used by the act.　The question has been decided against the plaintiff in the Second Circuit.　Edwards v. Keith (D. C.) 224 Fed. 585, affirmed 231 Fed. 110, 145 C. C. A. 298, L. R. A. 1918A, 498, certiorari refused 243 U. S. 638, 37 Sup. Ct. 402, 61 L. Ed. 942.　In Lynch v. Hornby, 247 U. S. 339, 38 Sup. Ct. 543, 62 L. Ed. 1149, decided June 3, 1918, it is said "that Congress was at liberty · *　*　* to tax as income, without apportionment, everything that became income, in the ordinary sense of the word, after the adoption of the amendment," etc. And see Hays v. Gauley, etc., Co., 247 U. S. 189, 38 Sup. Ct. 470, 62 L. Ed. 1061, decided May 20, 1918.

[2] The other questions need only a few further words.　That the act, although passed in October, 1913, could tax the plaintiff's income from March 1st of that year is settled.　Brushaber v. Railroad Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414.　And, if we assume that he has a claim—equitable at least—to be credited for business expenses incurred while he was earning the right to commissions, we can only say that nothing in this

record enables us to ascertain the proper amount. His equitable claim to some deduction may be a ground for action by Congress, but it cannot be a complete bar to the government's claim for a tax that otherwise appears to be due.

[3] The tax for 1913 was not assessed until May, 1915; but this was in time under paragraph E, if the plaintiff's return was "false." On this point we think the government's position is sound. "False" evidently does not mean "fraudulent," for it is used in opposition to that word; and we think it means not true, or incorrect, as was held by the Circuit Courts of Appeals in the First and the Eighth Circuits in considering the act of 1909. Eliot Nat. Bank v. Gill, 218 Fed. 600, 134 C. C. A. 358; Nat. Bank of Com. v. Allen, 223 Fed. 472, 139 C. C. A. 20.

In each case the judgment is affirmed.

---

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes