## ARTHUR F. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17714, 21423. Promulgated September 30, 1929.

*Henry Ravenel, Esq., Geo. B. Buist, Esq.,* and *J. A. Selby, Esq.,* for the petitioner.

*A. H. Fast, Esq.,* and *H. D. Thomas, Esq.,* for the respondent.

OPINION.

SIEFKIN:[1] As we view this case, the petitioner can succeed only if he has shown that prior to the year 1921 he assigned a property

---

[1] This decision was prepared during Mr. Siefkin's term of office.

right that had matured. He can not succeed in this proceeding if the subject matter of his assignment has not come into being. We believe the agreement of the petitioner with his wife and the assignments made pursuant thereto merely constituted an assignment of the petitioner's future income and that the amounts received by Mrs. Hall were income to the petitioner. This conclusion is based primarily upon *Woods* v. *Lewellyn*, 252 Fed. 106. There an insurance agent received in 1913 commissions derived from renewal premiums paid on policies obtained by him and accepted by the company in earlier years. The Circuit Court of Appeals, Third Circuit, although recognizing a value in the contract, held that the commissions received in 1913 were income, and said:

In each suit the important question is whether the act of 1913 taxes as income an agent's commissions that were actually received by him within the taxing period, if these commissions were derived from renewal premiums paid on policies that were obtained by him and accepted by the society in some earlier year. In our opinion, the answer is that the act does tax money thus received; the reason being that such money is "income" within the period during which it came into the agent's hands. The act (section 2, par. A, subd. 1) lays a tax on "the entire net income arising or accruing from all sources during the preceding calendar year," and goes on to declare in paragraph B that such "net income * * * shall include gains profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or" (evidently in order to include by a drag-net clause any money that might have escaped even the sweeping words just quoted) "gains or profits and income derived from any source whatever, * * *" The commissions in controversy appear to us to be embraced by this widely inclusive language. No doubt they were earned by work done and money spent in the earlier years; the agent's work was complete when he obtained the application and the society issued the policy; his right to commissions on future renewals came then into being, and he himself was required to do no more. He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made how much the rest would be, and in no event could he receive it except in annual installments. Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event, he would receive nothing more; or renewals might be paid only in part and then he would be entitled to commissions on that part only. The insured might die before a given renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commission perished. The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should be made he had no collectible claim against the society. He had a property right that had value but contained also an element of risk, and unless he turned it into money it remained contingent. The act taxes money, or its equivalent, or its representative, and a contingent right such as this is not "income" in the sense used by the act.

If there was no return of capital in *Woods* v. *Lewellyn, supra,* (and it seems to us that the taxpayer's argument must rest upon the theory that the payments were a return of capital), it would follow, in this proceeding, that the petitioner did no more than attempt to assign future income, the payment of which, either to the petitioner or his assignee, were dependent upon conditions existing in the year of payment and unknown and contingent to that time.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

PHILLIPS and MORRIS concur in the result.

GREEN and LOVE dissent.

———

SMITH, dissenting: By the instrument executed by the petitioner on January 2, 1921, he sold, assigned, transferred, and delivered to his wife " an undivided interest in and to a certain contract." This was an irrevocable assignment of an interest in a subsisting contract, the substance of which was a right to receive annually, certain commissions on renewal premiums, as and when such premiums were paid to the company, and the assignment of such interest in that contract absolutely precluded petitioner from ever receiving that part of those commissions so assigned. In the prevailing opinion of the Board it is stated that the petitioner can not " succeed in this proceeding if the subject matter of his assignment has not come into being." It appears to me that the subject matter of the assignment here involved was in being at the date of the assignment. The opinion of the court in *Woods* v. *Lewellyn,* 252 Fed. 106, is not determinative of the issue here presented. It would be determinative of the issue had the petitioner not made any assignment of his contract and had contended that the renewal premiums received in the years 1921 to 1924, inclusive, were not taxable income to him. But he makes no such contention. Furthermore, I do not think that it is true that the taxpayer's argument " must rest upon the theory that the payments were a return of capital."

I can not doubt that if the respondent had contended that the amounts received under the contract by petitioner's wife were taxable income to her, such contention would have to be sustained upon the authority of *Irwin* v. *Gavit,* 268 U. S. 161. In that case the decedent by will had created a trust and provided for the payment of a portion of the income of the trust to testator's son-in-law. It was held that such payments were taxable income of the son-in-law. The court quotes from section II of the Income Tax Act of 1913, and states in part:

\* \* \* The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received

by the trustees and paid over to A would be Income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so-called simply because of a severance between it and the principal fund. * * *

The language of the statute is equally applicable to a gift.

The tax laws do not contemplate that one shall be taxed on the income of another, even though the primary right to receive that income may have been in him, but irrevocably alienated prior to its receipt.