## WORKMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4239.

Circuit Court of Appeals, Seventh Circuit.

May 28, 1930.

Albert E. James, of Washington, D. C., for petitioner.

John G. Remey, of Washington, D. C., for respondent.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

On or about January 20, 1898, the petitioner entered into a contract of agency to represent the Franklin Life Association of Springfield, Ill., hereinafter referred to as the company, in which it was provided, among other things, that from and after the date thereof petitioner should receive from the company one-half of the expense loading contained in the gross premiums on policies of insurance thereafter issued by the company, and, in addition thereto, one-half of the net savings or profits to the company on all non-participating policies. It was further provided in the contract that the company would pay to petitioner on all policies written thereunder the amounts therein stipulated when collected, so long as such policies should remain in force, irrespective and regardless of the termination of the contract or of the association of petitioner with the company under the contract, whether such association should be terminated by death, mutual consent, or otherwise.

Thereafter and from time to time the contract was modified in certain particulars with reference to insurance to be written after the dates of the modifications, and on December

140

31, 1906, the contract as to future insurance was terminated by mutual consent.

Upon the termination of the contract it was agreed by the petitioner and the Franklin Life Association (then and at that time the Franklin Life Insurance Company) that the company, notwithstanding the termination of the contract, would pay to petitioner all renewal commissions and other moneys to which he should become entitled on account of insurance issued under the contract of January 20, 1898, and the addenda, amendments, and modifications thereof.

At all times from the date of the contract and the amendments thereof, the company duly paid to petitioner various and sundry sums pursuant to the contract, its amendments and addenda, and is continuing so to do; but at no time after January 1, 1907, was any insurance written under the contract, but the commissions thereunder thereafter received by petitioner were paid according to the terms of the contract and by virtue of its provisions and for no other reason.

At March 1, 1913, after making due allowance for anticipated lapses of policies then in force, the reasonably anticipated payments to petitioner on account of insurance written under the aforesaid contract amounted to a gross sum of $156,176.22, of which the anticipated payments for the year 1920, after making the said allowance, were in the amount of $11,500.99; for the year 1922 were in the amount of $8,302.49; for the year 1923 were in the amount of $6,397; and for the year 1924 were in the amount of $4,559.96.

The present value at March 1, 1913, of the amounts so anticipated to be paid in the years 1920, 1922, 1923, and 1924, were $7,-648.81, $4,914.23, $3,572.05, and $2,402.13; said amounts being the anticipated amounts as hereinabove set forth, discounted at the rate of 6 per cent. to the anticipated date of payment.

In and for the year 1920 petitioner received, in pursuance of the terms of said contract, the sum of $12,145.57; for 1922, the sum of $9,089.54; for 1923, the sum of $6,-705.52; and for 1924, the sum of $4,277.68.

In rendering his return of income to the collector of internal revenue for 1920, petitioner included in taxable income the amount received as above; and for the years 1922, 1923, and 1924 petitioner did not include in his returns the amounts received as above set forth.

Thereafter the Commissioner of Internal Revenue caused an examination to be made of petitioner's tax liability in and for the

years 1920, 1922, 1923, and 1924, and determined as to 1922, 1923, and 1924, that petitioner's net taxable income should be increased by the said amounts of $9,089.54, $6,705.52, and $4,277.68; and for 1920 determined that petitioner was not entitled to exclude from income the amount of $12,145.-57, or any part thereof, and has correctly returned his income by including this amount in full in his return.

Thereafter the Commissioner duly transmitted to petitioner a letter dated December 17, 1926, wherein he set forth deficiencies resulting from the said additions to taxable income in and for 1922, 1923, and 1924, and a deficiency for 1920 in the amount hereinabove set forth.

The pertinent provisions of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1065, 1067, are as follows:

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service. * * * "

"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence; * * * "

The regulations of the Treasury Department which relate to the subject-matter are found in the following articles of Regulations 45:

"Art. 31. *What included in gross income.* —* * * In general, income is the gain derived from capital, from labor, or from both combined, * * * "

"Art. 52. *When included in gross income.*—Gains, profits and income are to be included in the gross income for the taxable year in which they are received by the taxpayer, unless they are included when they accrue to him in accordance with the approved method of accounting followed by him."

"Art. 162. *Depreciable property.*— * * * The deduction of an allowance for depreciation is limited to property used in the taxpayer's trade or business.

"Art. 163. *Depreciation of intangible property.*—Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangi-

bles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner."

The corresponding provisions of Regulations 62, articles 31, 51, 162, and 163, are the same as those quoted, as are the corresponding articles of Regulations 65, articles 31, 50, 162, and 163.

The sole question presented is whether the renewal commissions which petitioner received in 1920, 1922, 1923, and 1924, on insurance policies written prior to March 1, 1913, under a contract made and performed prior to that date, constitute income in their entirety. The facts as above set forth are parallel to those in Woods v. Lewellyn (C. C. A.) 252 F. 106, 108. In speaking of similar commissions the court in that case used the following language:

"No doubt they were earned by work done and money spent in the earlier years; the agent's work was complete when he obtained the application and the society issued the policy; his right to commissions on future renewals came then into being, and he himself was required to do no more. He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made [as to] how much the rest would be, and in no event could he receive it except in annual installments. Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only. The insured might die before a given renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commissions perished. The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should be made he had no collectible claim against the society. He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent. The

act taxes money, or its equivalent, or its representative, and a contingent right such as this is not 'income' in the sense used by the act."

This reasoning seems to us to be sound, and it is supported by the following decisions: Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Edwards v. Keith (C. C. A.) 231 F. 110. The converse of petitioner's position is forcibly illustrated in the case of Edwards v. Keith (D. C.) 224 F. 585, in which it is suggested that perhaps petitioner, if called upon to do so, would not readily agree that future insurance commissions contingent upon the nonlapsing of policies, should be charged to him for taxation either as capital or income for the present year.

Of course, there are instances where such contingent rights to commissions have been bartered and sold, and present values have been placed upon them by reference to mortuary tables and lapsing probabilities, with reliable accuracy; but the contingency is never eliminated so far as the agent is concerned, nor is the contingent right ever impressed with the characteristics of capital so long as the agent's right to receive it is contingent upon the nonlapsing of the policy.

The order is affirmed.