*775 OPINION.
Artjndell :
The respondent contends that the decision in this case should be controlled by our earlier decisions in other paving contract cases. See Consolidated Asphalt Co., 1 B. T. A. 79; Uvalde Co., 1 B. T. A. 932; Mead Construction Co., 3 B. T. A. 438. In those cases, as in this, there were contracts which required the taxpayer to main *776 tain the paving for a period of years. In the Consolidated Asphalt and TJvalde cases the full contract price was paid to the contractors in cash or receivables upon completion of the paving and the contractors set up reserves tq provide for the estimated cost of maintenance of the paving over the guarantee period. We sustained the respondent’s disallowance of claimed deductions in the amounts of the reserves and said in, the Consolidated Asphalt case:
* * * When a taxable corporation in the course of its business of making profits receives contractual compensation for work done and material furnished, it can not contend that a part of the amount received is not income because the taxpayer is subject to a collateral obligation the fulfillment of which may require it to spend some of the amount. * * * this result is not changed because in the light of general experience the taxpayer feels reasonably certain of the necessity to expend the amount and is impelled by business prudence to set up a reserve therefor.
We quoted the above language in the Uvalde Co. decision and added:
* * * We can not find in the revenue law any authority for deducting from income in any taxable year sums as expenses, neither paid nor incurred within the year.
In the Mead Construction case the paving contracts provided for the deposit of bonds by the contractor to guarantee maintenance of the pavement and did not, as in this case, provide for withholding any part of the contract price. In practice a short cut was taken and instead of paying over the contract price and receiving back a guarantee fund, the city in some instances withheld a part of the amount owing to the contractor who set up a reserve equal to the amount withheld and claimed a deduction therefor. In the opinion in that case we said:
If, in the present appeal, the contractor in fact received the contract price and in fact transferred cash or bonds to the city for deposit as required, the contract price would have been income notwithstanding the deposit or pledge for proper maintenance. But the procedure was simplified, and the city retained the deposit fund in the first instance. The fact that it did so with the heavy hand of its municipal power does not change the taxpayer’s contractual right to the full compensation and its obligation to make deposit.
In each of the above mentioned paving cases the question presented was primarily that of whether a deduction from income was allowable by reason of the taxpayer’s obligation to keep the paving in repair for a period of years. The claimed deductions were disallowed because the estimated expenses were neither paid nor incurred within the taxable year. We also held in each of those cases that the entire contract price was in the first instance income to the taxpayer. In the Consolidated Asphalt case, where the taxpayer’s accounts were kept on the cash basis, the taxpayer actually received the entire sum. In the Uvalde and Mead Construction cases, in which the tax *777 payers kept their accounts on the accrual basis, the taxpayers had the contractual right to full compensation without deduction for any contingent maintenance costs and it was held that the entire contract price should be accrued as income. The present case presents solely a question of income and does not involve deductions. While the contracts here involved named a contract price for the several paving jobs, petitioners did not have the unqualified right to receive the full amount of such contract price upon completion of the work, as the contracts specifically provided that a portion was to be retained by the several municipalities as a guarantee fund for a specified period of time. The taxpayer had no unqualified contractual right in the taxable years to demand or receive the amounts withheld pursuant to the contracts. It did not know, and had no way of determining, what portion of the amounts withheld it would ultimately receive. The city governments might have found it necessary to spend the entire sum for maintenance and left nothing for the contractor. In the city of Lakewood contracts the taxpayer specifically waived any cause of action against the city by reason of expenditures from the guarantee fund.
In Great Northern Railway, 8 B. T. A. 225, where the taxpayer,' keeping its accounts on an accrual basis, did not accrue as income interest due and owing to it by debtor corporations which were continually operating at a deficit and the evidence indicated that the interest never could be collected, we held that the respondent erred in adding such interest to income and said in part:
Where books are kept on the accrual basis there is no requirement that there shall be accrued as income that which may never be received. The position of the respondent in this case carried to its logical conclusion would require a taxpayer keeping its books of account upon the accrual basis to accrue as income interest on the bonds held as an investment which it did not collect and which in all .probability it never would collect. If the theory of the respondent is correct an insolvent corporation keeping its books of account upon the accrual basis might merely by the purchase of bonds of insolvent corporations upon which interest was neither being earned or paid, easily show a large income.
In Lucas v. North Texas Lumber Co., 281 U. S. 11, the taxpayer reported as accrued income in 1916 the profit on.a sale of land which it contracted to sell in 1916 but the completed transfer of which was not made until early in 1917. The Supreme Court held that the profit was not to be accounted for as 1916 income and said:
An executory contract of sale was created by the option and notice, December 30, 1916. In the notice the purchaser declared itself ready to close the transaction and pay the purchase price “as soon as the papers were, prepared.” Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price In 1916. The title and right of possession remained in it until the transaction was closed. Con *778 sequently unconditional liability of vendee for the purchase price was not created in that year.
In Woods v. Lewellyn, 252 Fed. 106, the question was whether renewal commissions on policies of insurance written by the taxpayer prior to March 1, 1913, were taxable income when received by him after that date. The court held the commissions taxable, saying:
No doubt they [commissions] were earned by work done and money spent in the earlier years; the agent’s work was complete when he obtained the application and the society issued the policy; his right to commissions on future renewals came then into being, and he himself was required to do no more. * * * Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only. * * * The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should he made he had no collectible claim against the society. He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent. The act taxes money, or its equivalent, or its representative, and a contingent right such as this is not “ income ” in the sense used by the act.
These decisions establish the principle that a taxpayer on the accrual basis is not required to include in income sums to be received in the future where there is a substantial contingency as to the amount to be received or the time of its receipt. In our opinion the present case falls within that principle, as during the time the funds were withheld petitioner’s right to receive any part of them was entirely contingent. Until the expiration of the guarantee period there was, as said in the North Texas Lumber case, no unconditional liability on the part of the cities to pay any part of the guarantee funds.

Decision will be entered v/ntil Bule 50.