## Fritz Worm, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 39079. Promulgated February 3, 1931.

*Forney Johnston, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

TRAMMELL: While the first assignment of error is based on the failure of the Commissioner to find that the petitioner's interest in

the 2,500 shares of stock had a certain value on March 1, 1913, the real question is whether the petitioner owned any interest in this stock on March 1, 1913. It was stipulated that the value of the stock on March 1, 1913, was $200 per share. In our opinion the petitioner did not own a vested interest in the 2,500 shares of stock on March 1, 1913. He was to have a one-fourth interest in the value of the stock over and above the par value when the stock was sold, when he resigned from the company, or his estate would receive that interest when he died. He was not to receive with any definiteness any interest in the stock itself at any time, but only an interest in the enhanced value over par. If the petitioner had resigned from the company or the stock had been sold or he had died, it may well be that when such event occurred there might have been no enhanced value of the stock over par. On March 1, 1913, while the stock had a stable value of at least $200 a share, the petitioner had no right to receive anything at that time. He had not been given the stock, or any interest in it, at that time. He had no right to demand any portion of the stock. He had no right to receive dividends on the stock. He had no definite assurance that he would ever receive anything from the stock. The right to do so was contingent on the fact that the stock at the time sold or at the time he resigned should have a value in excess of par, or, in the event of his death, if its value were in excess of par, his estate would receive the excess.

This situation is materially different from the case of a vested interest in property where the use and enjoyment thereof has been postponed. This is not a case of postponing the use and enjoyment, but a case of a contingent right to receive anything. The fact that the stock was worth substantially more than par in 1913 does not mean that the petitioner had a vested interest in it at that time. The company merely promised to give him an interest when the stock was sold or when he resigned, or to give it to his estate if and when he died. His interest in any event was contingent upon the value of the stock aside from the other conditions. If business conditions had become less favorable so that the stock would have become reduced in value to par the petitioner would have had no interest whatever. In other words, the question as to whether the petitioner had an interest at all or not depended upon conditions existing at the time of the sale of the stock, or at the time of his resignation or death. On March 1, 1913, the petitioner had no present right or title to any stock or interest therein over which he had the right of possession or enjoyment or alienation. He merely had a future right which may never have materialized or ripened into title, possession, or enjoyment. Under these facts and condi-

tions we do not think that the petitioner had a vested right or interest of any particular or ascertainable value on March 1, 1913.

The petitioner cites the case of *Eldredge* v. *United States*, 31 Fed. (2d) 924, and *Lucas* v. *Alexander*, 27 Fed. (2d) 237, which was affirmed by the United States Supreme Court, —— U. S. ——; 7 Am. Fed. Tax Rep. 8871; and also the case of *Kentucky Tobacco Products Co.* v. *Lucas*, 5 Fed. (2d) 723. We do not think that either one of these cases supports the view of the·petitioner in this case. In all of those cases the taxpayer had something on March 1, 1913, out of which profits were subsequently realized and an allocation was made in order to determine how much of the profits accrued subsequent to March 1, 1913.

In this case, however, the taxpayer merely had a contingent right of an indefinite character. This case is more closely analogous of the case of *Workman* v. *Commissioner*, 14 B. T. A. 1414, affirmed by the Circuit Court of Appeals, Seventh Circuit, 41 Fed. (2d) 139, and the case of *Wood* v. *Lewellyn*, 252 Fed. 106. In the latter case the Court said, in speaking of insurance commissions:

No doubt they were earned by work done and money spent in the earlier years; the agent's work was complete when he obtained the application and the society issued the policy; his right to commissions on future renewals came then into being; and he himself was required to do no more. He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made (as to) how much the rest would be, and in no event could he receive it except in annual installments. Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only. The insured might die before a given renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commissions perished. The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should be made, he had no collectible claim against the society. He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent. The act taxes money or its equivalent, or its representative, and a contingent right such as this is not " income " in the sense used by the act.

The Court held that the value on March 1, 1913, of the right to receive insurance commissions, although earned previous to that date, should not be offset against the commissions actually received in subsequent years due to the uncertainties and contingencies surrounding them, but here there was more uncertainty, indefiniteness and more of a contingency than existed in the *Lewellyn* case and the other cases above cited. We do not think that the case of *Kentucky Tobacco Products Co.* v. *Lucas, supra*, is contrary to the

40

views herein expressed. In that case the Court held that the contract was of great value on March 1, 1913. The question there was the valuation of the contract. The question here with which we are concerned is not so much valuation, but whether the petitioner had anything on March 1, 1913, to which a March 1, 1913, value may be attributed. Clearly, he did not own any stock on March 1, 1913, and his right at that time to ever acquire any or any interest therein was indefinite, uncertain, and entirely contingent upon the happening of something in the future which might never happen, and in the event it did happen, that is, if the petitioner had resigned or the German company had sold its stock, there might have been no excess over par. The petitioner's resignation was the only event over which he had control.

In view of the foregoing, it is our opinion that the petitioner was not vested with a property right in the stock or a definite right therein on March 1, 1913, which should be offset against the amount received when the stock was sold. We therefore approve the Commissioner's determination with respect to this issue.

The second issue is whether the profit on the sale of the stock should be computed under the capital gain provisions of section 206 (a) of the Revenue Act of 1921. The petitioner contends that his interest in the 2,500 shares of stock was acquired in 1904 and was held by him continuously as an investment from that date until the property was sold by the Alien Property Custodian and he received a share of the proceeds in 1923. Regardless of whether otherwise this transaction might come under the capital gain provisions, we do not think that it does in any event come under section 206 (a) of the 1921 Act, for the reason that the sale was consummated in 1919, and the capital gain provisions of the 1921 Act specifically related to sales or exchanges of capital assets consummated after December 31, 1921. It therefore becomes unnecessary to discuss further whether the sale of this stock constituted a sale of capital assets of this petitioner held by him for profit or for investment for more than two years.

*Judgment will be entered for the respondent.*