JOHN A. MCPHERSON, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE L. MCPHERSON, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17265, 28565, 28566.   Promulgated February 17, 1931.

*Charles E. McCulloch, Esq.*, and *Ivan F. Phipps, Esq.*, for the petitioners.

*R. W. Wilson, Esq.*, for the respondent.

## 198

OPINION.

ARUNDELL: Testimony was offered that the partnership rights under the agreements described in the findings of fact had a fair market value on March 1, 1913, of $300,000. The figure testified to was roughly one-fourth of the then value of the timber lands in excess of their cost, plus interest, and carrying charges. The petitioners contend that only so much of the income received under the contracts in the taxable years as is in excess of this sum is taxable income. Petitioners, on March 1, 1913, not only had no right to demand any specific sum, but had no right to make any demand under the contracts. What, if anything, they were to receive depended entirely on what the future might hold. Payment, when and if made, was to be not only for services rendered by the partnership prior to March 1, 1913, but covered as well services to be rendered by the petitioners after that date. They were to continue to perform certain duties until such time as the timber would be sold and it was impossible at March 1, 1913, to tell when that would be.

Regardless of whether the contracts had an ascertainable value at the basic date, the question of law presented has been decided adversely to petitioner's claim in a number of cases. In *Edwards* v. *Keith*, 231 Fed. 110; certiorari denied, 243 U. S. 638, the plaintiff prior to March 1, 1913, wrote policies of insurance under agreements

with an insurance company entitling him, as compensation for his services, to a certain commission on the first premium paid by the assured, and a percentage of any renewal premiums paid. The contracts of employment contained a provision that "commissions shall accrue only as the premiums are paid in cash." In deciding that all of the commissions paid to the plaintiff after March 1, 1913, on business solicited prior thereto, was taxable income, the Court remarked:

> It may be noted that, although fully earned by work already done, there is no certainty that the sum conditionally promised for an ensuing year will ever be paid or will accrue or come due; John Doe may die within the first year, or at its expiration may refuse to renew his policy in which event the company is not obligated to pay its agent anything beyond the amount already paid him; the obligation to pay does not arise until John Doe actually pays his renewal premium in cash.

The same conclusion was reached in *Woods* v. *Lewellyn*, 252 Fed. 106, and *Workman* v. *Commissioner*, 41 Fed. (2d) 139, affirming *W. F. Workman*, 14 B. T. A. 1414, on facts similar to those in the *Edwards* case. See also *E. S. Jones*, 6 B. T. A. 1048, and *J. Noble Hayes*, 7 B. T. A. 936.

The fact that the contract rights had a determinable value on March 1, 1913, does not alter the rule. In the *Workman* case, *supra*, the Commissioner admitted that the right of the taxpayer to commissions on renewal premiums had a value on March 1, 1913, yet the Court, following *Woods* v. *Lewellyn*, *supra*, had no difficulty in reaching the conclusion that all of the commissions were taxable in the years paid. The argument against treating the contract rights as income fully earned by March 1, 1913, is much stronger here than it was in *Woods* v. *Lewellyn*, *supra; Edwards* v. *Keith*, *supra*, and *Workman* v. *Commissioner*, *supra*. In those cases all of the work had been performed by the taxpayers prior to March 1, 1913, and on that date it could have been determined with a fair degree of accuracy what percentage of future premiums would be paid by the policyholders. Here the partnership had duties to perform for the owners after March 1, 1913, and some part of the amounts ultimately received may be said to be compensation for such services, payable when the timber was sold, provided a profit was realized by the owners. On March 1, 1913, it was believed by the petitioners that timber in the Nehalem Valley would enhance in value, but it is not claimed that at that time the approximate price at which the tracts would eventually sell could be determined.

The partnership on March 1, 1913, had no enforceable claim against the owners for compensation, for then the partnership not only had not fully earned its pay, but it was not definitely known that any of the tracts would be sold at a price entitling the partnership to

participate in the profits. The rights of the partnership to additional compensation were unliquidated and contingent, and on March 1, 1913, it had no accrued right.

The case of *Eldredge* v. *United States*, 31 Fed. (2d) 924, so much relied upon by the petitioners, is distinguishable on its facts. There it was known on March 1, 1913, that the assignee would exercise the options, that the properties would produce certain qualities of ore, and that payments sought to be taxed in their entirety would be made under the assignment. The case was regarded by the Court as not being inconsistent with the *Edwards* and *Woods* cases.

The respondent's action is sustained.

*Decision will be entered for the respondent.*