GERALD A. EUBANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86200. Promulgated March 14, 1939.

*Harry J. Rudick, Esq.*, for the petitioner.
*Albert E. Arent, Esq.*, for the respondent.

584

586

## OPINION.

HARRON: The sole question presented in this proceeding is whether petitioner is taxable upon commissions paid in the taxable year to an assignee. The commissions are of a particular type, i. e., commissions payable by insurance companies upon insurance renewal premiums paid by policyholders to them. Respondent contends that such commissions constitute earned income, "compensation for personal service", within the definition of gross income as defined in section 22 (a) of the Revenue Act of 1932, set forth below in part,[1] and that such income is taxable to petitioner, regardless of the assignments in earlier years, because he is the person who earned the income.

Respondent urges that the question be considered in its broad aspects rather than upon any possible distinctions between the form of the assignment made in 1924, of the interest in the contract, and of the one made in 1928, of the commissions. Respondent argues that the principle expressed in *Lucas* v. *Earl*, 281 U. S. 111, is controlling.

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Petitioner contends that he is not taxable on the commissions paid in 1933 upon either or both of the following arguments: (a) He contends that the commissions were fully earned prior to the assignments, his services having been performed fully, so that the assignment was of "past earnings" and, therefore, the tax liability is on the assignee. Petitioner argues that the principle of the *Lucas* v. *Earl* case is limited to assignment of earnings only where future services are required. (b) The right to receive future commissions was a type of property *in praesenti* at the time of the assignments, which may be assigned, and the commissions, when paid, vest in the assignee and are taxable to him. Petitioner relies on *Hall* v. *Burnet*, 54 Fed. (2d) 443. Other cases relied on by petitioner for either or both propositions are *Matchette* v. *Helvering*, 81 Fed. (2d) 73; certiorari denied, 298 U. S. 677; *Shanley* v. *Bowers*, 81 Fed. (2d) 13; *Walter L. Ross*, 30 B. T. A. 496; affd., 83 Fed. (2d) 18; *Julius E. Lilienfeld*, 35 B. T. A. 391; *Louis Boehm*, 35 B. T. A. 1106; *Blair* v. *Commissioner*, 300 U. S. 5. These cases are not controlling and are distinguishable.

The notice of deficiency refers to a separate instrument said to relate to a trust and to have been executed by petitioner June 18, 1928. The record does not contain any explanation of this reference, nor any denial of such, and the pleadings raise no question about the use of the commissions in question, so that this is not a case of income attributable to an assignor or settlor by reason of application of the income for his use or benefit. Cf. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine Railroad Co.*, 279 U. S. 732; *Burnet* v. *Wells*, 289 U. S. 670; *Douglas* v. *Willcuts*, 296 U. S. 1, 9; *Lucy A. Blumenthal*, 30 B. T. A. 591; affd., 296 U. S. 552; *United States* v. *L. Manuel Hendler*, 303 U. S. 564; *Helvering* v. *Coxey*, 297 U. S. 694. And, in the way the question is presented, the burden of proof on petitioner does not extend to proving that the commissions were not under petitioner's control or were not applied to his use or benefit. Cf. *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2, 3; *Bishop* v. *Commissioner*, 54 Fed. (2d) 298; *Hall* v. *Helvering*, 68 Fed. (2d) 399. If the question involved is one which should be decided on the principle that earned income is taxable to the earner and that his tax liability may not be escaped by anticipatory arrangements, it will become immaterial, in cases like this, what use is made of the commissions by the assignee. On the other hand, if it should be finally decided by the courts that an effective assignment for income tax purposes can be made of such commissions, relieving the earner-assignor from tax liability, then it will become important, in later cases, to prove that the commissions are not applied to the benefit of the assignor or used according to his control.

*Cf. Burnet* v. *Wells, supra,* where it was pointed out that tax liability may rest upon the enjoyment of privileges and benefits by the taxpayer so as to require consideration of the ends in the mind of the assignor in combination with assignment of bare legal title.

Taxation of commissions on renewal commissions has been considered in a few cases by this Board and in several cases by the Circuit Courts of Appeal, and the present unsettled state of the law on the question is to be found by reference to these particular cases, set forth in a schedule below for convenience.[2] In all reported cases, this Board has held such commissions taxable to the earner-assignor. In all the cases before the courts, subsequent to the *Edwards* and *Woods* cases, the courts have held the commissions taxable to the earner-assignor, except in the *Hall* v. *Burnet* case. The *Edwards* and *Woods* cases did not involve any question of tax liability of an earner-assignor, for no assignment of commissions was involved in those cases. In all the other insurance commissions cases, the question was essentially the same, although there appear to be some differences in the terms of assignments. It is difficult to find any essential differences in the question before the courts in the cases where assignment of the commissions was made and there is a conflict between the *Hall* v. *Burnet* case and the others.

In this proceeding, the assignments executed by petitioner adopted different phraseology. In the 1924 assignment all interest in an agency contract is assigned. In the 1928 assignment all commissions due or to become due and all right to them is assigned. We regard these differences as immaterial in this proceeding because it is evident that in both instances petitioner intended to assign future commissions. No evidence is present to the contrary. The question presented here does not relate to any question arising between the assignor and assignee under the assignments. The question arises out of a conflict between petitioner and the Commissioner over taxation of commissions paid in 1933. It is clear that petitioner in executing the assignments anticipated that commissions might be paid in the future, and he attempted to assign them to another in advance of payment of the commissions. The commissions were paid. It comes to the same thing so far as the tax question is concerned, whether one or the other phrases was used in the assignment as will be shown.

The contracts under which petitioner was an agent of the insurance companies were contracts of employment, in a broad sense. Compensation for services of petitioner consisted, in part, of com-

[2] Board cases: *Arthur F. Hall,* 17 B. T. A. 752; reversed, *Hall* v. *Burnet, supra; James M. Stokes, Jr.,* 22 B. T. A. 1386. Court cases: *Edwards* v. *Keith,* 231 Fed. 110 (C. C. A., 2d Cir.); *Woods* v. *Lewellyn,* 252 Fed. 106 (C. C. A., 3d Cir.); *Hall* v. *Burnet,* 54 Fed. (2d) 443 (App. D. C.); *Bishop* v. *Commissioner,* 54 Fed. (2d) 298 (C. C. A., 10th Cir.); *Parker* v. *Routzahn,* 56 Fed. (2d) 730 (C. C. A., 6th Cir.); *Van Meter* v. *Commissioner,* 61 Fed. (2d) 817 (C. C. A., 8th Cir.); *Hall* v. *Helvering,* 68 Fed. (2d) 399 (App. D. C.).

missions on renewal premiums which the companies agreed to pay over periods of ten years, more or less, from and after the time the first premium was paid on a policy. While the agency contracts under which petitioner obtained the business giving rise to the commissions were terminated, nevertheless, the contingent obligations of the companies to pay future commissions continued. The companies retained certain rights, among them the right to offset any debt of petitioner against any commissions payable and the right to change the percentage at which commissions should be payable. It is provided that petitioner can not dispose of any interest in the contracts without the consent and approval of the insurance companies.

As for the right to commissions arising out of said contracts and payable after their termination, it is clear that in 1924 and 1928, when the assignments were made, the rights were *future rights*. No present rights had matured when the assignments were made. The obligations of the insurance companies to pay the premiums could not arise until at a future time when, as, and if policyholders should pay renewal premiums on business obtained by petitioner. His rights to commissions at the dates of the assignments were contingent, unmatured, uncertain, and unascertained. The amounts of future commissions were uncertain. The insurance companies did not accept in writing the assignments of future commissions made by petitioner. They paid the commissions in 1933 to the assignee, but, as far as we know, they were not legally obliged to do so. It appears that, even after making the assignments, petitioner might have collected the future commissions. Cf. *Wood* v. *Commissioner*, 74 Fed. (2d) 78. Therefore, it is clear that petitioner had no present matured rights to assign and divest himself of, in 1924 and 1928, and, at best, the assignments were of money not yet due or of a contingent future debt of the insurance companies. No legal title to the future commissions was conveyed in 1924 and 1928, because all that was assigned was a chose in action. Rather, petitioner gave his assignee a power to collect and keep the commissions when they should be paid. Petitioner's assignee obtained, under the assignments when made, only an equitable interest in contingent, future commissions. "The assignment of future earnings cannot be regarded as an immediate transfer of any property, but the assignee has an authority or power to collect, and an implied agreement on the assignor's part not to revoke the power." Williston on Contracts, vol. 1, sec. 414. See also, section 447. From the above, we believe it follows that it comes to the same thing whether one or the other phrases of assignment is used, i. e., all interest in the agency contracts, or the right to receive commissions. It is not enough to describe the assignments as relating to an inter-

est in an existing contract, but it is necessary to consider what present interest the assignments could cover.

From the above, it is difficult to agree with the premise upon which the court in the *Hall* v. *Burnet* case arrived at its conclusion. The court in that case found that what was assigned was a species of property that gave rise to future income. The court recognized that if what was sought to be conveyed was personal earnings, such would be taxable to the assignor though he never received it. The line drawn is fine. Commissions on renewal premiums are compensation for personal service and are income within the statutory definition thereof. *Woods* v. *Lewellyn*, 252 Fed. 106. When the commissions are paid, they represent compensation for past services, earned income. So do salary and wages. Where salary is payable under a contract of ordinary employment, the right to salary under such contract is a future right that does not mature until salary becomes payable. A right to future salary under a contract of ordinary employment may be validly assigned. So it would seem to follow, from the doctrine of the *Hall* v. *Burnet* case, that if an earner should assign all interest in a contract of ordinary employment, consisting of a future right to future salary, it would be said that the assignment was of a property right and not of salary. But, if this were correct, it would not follow that the earner-assignor of the future salary would not be liable for income tax on such salary when it was paid. This would be contra to the rule of the *Lucas* v. *Earl* case. That case involved a question of taxation of salary and the problem here is whether to apply the rule of that case to such facts and compensation as is involved in this proceeding. It is worth while to compare the facts briefly.

In 1901 Earl agreed with his wife that any property either had or should acquire in the future should be treated as owned by them as joint tenants, and such property was to comprise earnings, salary, fees, or any rights in contracts and all the proceeds of such property. In 1920 and 1921 Earl received certain salary and fees and he claimed to be liable for income tax upon only one-half thereof. As for earnings, salary, and fees, such were Earl's property. They were the fruits of his work. The Supreme Court refused to separate the right he had to receive salary from the salary itself or from his work, i. e., to treat the salary as growing out of the contract between Earl and his wife. The Supreme Court did not regard the salary as money produced by the contractual right Earl's wife had obtained, but viewed it as growing out of Earl's services.

In this case the assignments were made in 1924 and 1928. The commissions in question were paid in 1933. The commissions were

the fruits of petitioner's past work. We find no grounds here for treating the commissions as growing out of an interest in a contract of employment instead of out of petitioner's personal services that could not have been found in the *Lucas* v. *Earl* case. But why not consider the similarities between this case and the *Earl* case? The subject there was salary; here, commissions. Both are compensation for personal services. Insurance commissions make up a large part of the compensation of an insurance agent, in addition to whatever salary he may receive. In a sense, the agent does not "earn" the commissions until third parties pay renewal premiums. No doubt the insurance companies regard the value of an agent's work in obtaining a new policy as dependent upon how long the policy is maintained. The insurance company elects to pay its agent for his work in obtaining the policy, on a commission basis, over a period of, usually, ten years, or for so long as the policy is maintained, up to ten years. Whether or not the commissions are ever paid depends on the ability of the insurance company to pay them, which in turn depends on whether policyholders pay renewal commissions. Likewise, whether future salary is ever to be paid depends upon the ability of the employer to pay the salary. Therefore, it seems reasonable to regard such commissions as we have here as in the same class with salary. Each is a form of compensation for personal service. Also, to resume the comparison between this case and the *Earl* case, the assignments made by petitioner in 1924 and 1928 were just as much an "anticipatory arrangement" as was the 1901 contract made by Earl. Here, petitioner anticipated that the commissions would be paid. They were paid. He gave to another the right to collect and keep the premiums. In effect, Earl gave his wife the right to collect and keep one-half of his future salary. We think it should be concluded here that the commissions in question grew out of petitioner's services and not out of assigned interests in a chose in action, keeping in mind the fact that we are dealing with an income tax question. We believe the doctrine of *Lucas* v. *Earl* is applicable here and that the rule of that case extends to commissions that are compensation for personal service and that tax on such commissions can not be escaped by anticipatory arrangements devised to prevent such compensation from vesting in the person who earned them.

If it appears to be a troublesome factor in applying the doctrine of *Lucas* v. *Earl* that no further services of petitioner were required to entitle him to receive the commissions, it is nevertheless true that the commissions represented future compensation at the date of the assignments and they were, in a sense, not "earned" until they became payable. Further, where payments are for personal services, it need not be a determining factor, in deciding upon whom tax

liability falls, that services have been fully performed. The rule, as we understand it, is that earned income is taxable to the earner. See *Blair* v. *Commissioner, supra;* cf. *Daugherty* v. *Commissioner*, 63 Fed. (2d) 77; *Rossmoore* v. *Commissioner*, 76 Fed. (2d) 520; *Chicago Title & Trust Co., Executor*, 33 B. T. A. 65; *James M. Stokes, Jr.*, 22 B. T. A. 1386. The definition of gross income is broad and is to be considered in the light of the evident intent of Congress "to use its power to tax to the full extent." *Douglas* v. *Willcuts, supra*. If an earner of income may divest himself of earned income before it is payable, the intent of Congress to tax the earner of income is defeated at the start. Such assignments of future income in the guise of assigning some type of contractual right or an interest in a chose in action may become a device for withdrawing from the Government the benefit of graduated taxes and surtaxes applicable to income when concentrated in a single ownership. Cf. *Burnet* v. *Wells, supra*. For purposes of income tax, we believe that earnings are in a separate class from other types of income, cf. *Matchette* v. *Helvering supra*, and insurance commissions are a type of earnings.

It has been a guiding principle in the consideration of tax questions that taxation is not so much concerned with refinements of title as it is with the actual benefit for which the tax is paid. *Corliss* v. *Bowers*, 281 U. S. 376. And if the rule is made certain that earned income is taxable to the earner, no confusion need arise because in one case an earner assigns his right under a contract to future income and in another he assigns the bare, future income. The rule is bottomed upon the distinction between the source of income earned by the performance of personal services and income produced by interests that clearly are property, separate from the person. Cf. *Blair* v. *Commissioner, supra*, where the Court points to a distinction between a beneficial interest and a chose in action. We agree with the conclusion reached in the *Van Meter* case, *supra*, that the rules of the *Lucas* v. *Earl* and the *Corliss* cases are opposed to the view expressed in the *Hall* v. *Burnet* case and it is concluded here that, while the earner of such commissions as we have here may in a legally binding way dispose of his future earnings, whether they are earned or are to be earned, he does not thereby affect his status as earner, or "his resulting liability for taxation thereon as income."

It is held that petitioner is taxable upon the commissions paid in the stipulated sum of $15,612.79. Respondent is sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK concurs only in the result.

ARUNDELL, LEECH, and ARNOLD dissent.