S. NAITOVE & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8186.   Promulgated October 7, 1927.

> Where a corporation, keeping its books on the accrual basis, entered into an agreement with certain employees whereby it agreed to pay each employee as contingent compensation, a percentage of the net profits for the year 1919, subject, however, to the condition that no employee should be entitled to withdraw any amount credited to him pursuant to the agreement, except upon consent of the president of the corporation, unless he should remain in the employ of the corporation for a period of five years, and to the further condition that during the period of five years the amounts credited to each employee should remain in and at the risk of the business, it may not deduct from gross income for the year 1919, the amounts credited to each employee as of December 31, 1919.

*Robert E. Coulson, Esq.,* and *R. Kemp Slaughter, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits tax for the calendar year 1919 in the amount of

$59,049.33. The petitioner alleges that, in determining the deficiency herein, the respondent erred in the following particulars:

(1) In disallowing as a deduction from gross income for the calendar year 1919, the amount of $116,548.88, which amount it is alleged represented compensation of certain employees for that year pursuant to an agreement hereinafter set forth, but which amount was charged on the petitioner's books as a selling expense.

(2) In failing to compute the petitioner's profits tax for 1919 under the provisions of section 328 of the Revenue Act of 1918, instead of upon the basis of book invested capital after the disallowance of selling expenses in the amount of $116,548.88.

### FINDINGS OF FACT.

The petitioner is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 725 Broadway, in the City of New York. Its business is that of buying and selling woolen, silk, and cotton goods.

Samuel Naitove, petitioner's president, was general executive in charge of the business and during the year 1919 he owned 85 per cent of the outstanding capital stock. The remaining 15 per cent of the outstanding capital stock was owned by Herbert H. Rabiner, a member of the board of directors.

Petitioner had five employees who held important positions and who constituted the entire staff of the business for the purpose of buying and selling. One of these employees did all of the buying in his department, another assisted the president of the company in the buying in the department over which the president gave personal supervision, two others were efficient salesmen, and another handled all of the credit matters.

These employees were dissatisfied with the compensation being paid to them by the petitioner and they informed the petitioner's president that they were contemplating going into business for themselves. In order that those employees would remain with the petitioner an agreement was entered into between the petitioner and the employees, by which agreement they would, under certain conditions, participate in the profits of the business. This agreement was expressed in a resolution passed by the board of directors of the petitioner on February 10, 1919, as follows:

RESOLVED, That additional compensation for the year 1919 be paid to the following officers and employees of the company in accordance with the practice of the company on the following basis:

Mr. Moe Naitove, 10% of the net profits for the year 1919;

Mr. Nat Naitove, 10% of the net profits for the year 1919;

Mr. Jack Naitove, 10% of the net profits for the year 1919;

Mr. Moe Turman, 5% of the net profits for the year 1919;

Mr George Naitove 5% of the net profits for the year 1919;

Provided, however, That any and all sums to which the above named officers and employees may become entitled under the terms of this resolution shall remain in the business at the risk of the business for a period of five years, and that prior to the expiration of such period said officers and employees shall be entitled to demand and receive payment of the sums to which they may become entitled only to the extent that drawings against such sum may be authorized by the president of the company, it being the intention of this resolution that any and all contingent compensation to which said officers and employees may become entitled under the terms of this resolution, be at the risk of the business in the sense that it shall be subject to pro rata deductions in the event that losses are incurred by the business during the period within which such sums are to remain at the risk of the business; and provided, further, that no officer or employee shall at any time be entitled to withdraw any sums credited to him under the terms of this resolution, except as hereinabove provided, unless he shall remain in the employ of S. Naitove & Co., Inc., during the entire period during which the credits mentioned are to remain at the risk of the business, and in the event of the discharge of any such officer or employee or withdrawal during such period, all right, title or interest of such officer or employee in or to any sums credited to said officer or employee under the terms of this resolution shall revert to this corporation.

The petitioner kept its books of account on an accrual basis of accounting and pursuant to the above-quoted resolution the following entry was made in closing the petitioner's books as of December 31, 1919, which entry was correctly computed:

Charge, selling and commission $116,548.44

| | |
|---|---:|
| Credit Moe Naitove | $29,137.11 |
| Jack Naitove | 29,137.11 |
| Nat Naitove | 29,137.11 |
| George Naitove | 14,568.56 |
| Moe Turman | 14,568.55 |

additional compensation as per agreement.

The compensation provided for in the above-quoted resolution and which was accrued on petitioner's books, was reasonable for the services rendered by those employees in the year 1919.

In the year 1920, a resolution, similar to that of February 10, 1919, was passed by the petitioner's board of directors, continuing the compensation for services rendered in 1920 on the same basis as authorized for services rendered in the year 1919.

In the year 1920, the petitioner suffered a loss of approximately $90,000 and pursuant to the terms of the above-quoted resolution there was entered on the petitioner's books as of December 31, 1920, the following accruals:

| | |
|---|---:|
| Charge Moe Naitove 10% | $10,441.42 |
| Nat Naitove 10% | 10,441.42 |
| Jack Naitove 10% | 10,441.42 |
| George Naitove, 5% | 5,220.71 |
| Moe Turman, 5% | 5,220.71 |
| Credit surplus account | $41,765.68 |

This entry gave effect to the participation by the five employees in the petitioner's losses for the year 1920.

Upon audit of the petitioner's return for the year 1919, the Commissioner disallowed as a deduction from gross income the amount of $116,548.44 accrued as additional compensation to employees for that year.

### OPINION.

LOVE: The first question presented for our consideration is whether the amount of $116,548.88 accrued on the petitioner's books on December 31, 1919, as additional compensation under the above-quoted resolution, constitutes an allowable deduction from gross income for the year 1919.

The petitioner urges that to deny the deduction claimed and accrued on its books at the close of the year 1919, would not only be a reversal of the decision of the Board in the *Appeal of Block & Kohner Mercantile Co.*, 4 B. T. A. 673, but would be equivalent to holding that contingencies which may arise would abrogate a closed transaction.

We are of the opinion that the facts in the instant appeal do not bring it within the purview of the Board's decision in the *Appeal of Block & Kohner Mercantile Co., supra.* In that appeal the petitioner entered into an agreement with one Weinbach whereby, in consideration of the mutual covenants therein, Weinbach was to work for the petitioner on a regular monthly salary and in addition thereto he was to receive one-third of the net profits earned by the petitioner and he was also to share any of the petitioner's losses. The contract was for three years unless terminated by consent or notice as provided therein, or by Weinbach's death, at which time the right to share in the net profits terminated. In holding that the amount accrued to Weinbach as of December 31, 1919, constituted a liability against the petitioner in the accrued amount, subject only to be defeated by subsequent losses, the Board stated:

The petitioner is entitled to this deduction on the ground that the one-third share of its profits was at the end of the year definitely committed to Weinbach, subject only to be defeated by a subsequent net loss, over which the petitioner had no control.    *    *    *

Weinbach had no right to have part of the profits impounded or intrusted. He merely had a cause of action in contract the damages of which would be measured by the percentage of profits. This is an accrual deduction.

It is said that the liability is not determined until the end of the contract period, which, so far as payment is concerned, is true. Weinbach could not have sued to recover. But this is too rigid a test. As a reasonably prudent person the petitioner was committed not to impair the percentage. It was only by a business loss which the petitioner would not reasonably be supposed

to bring about voluntarily that the amount could be impaired, and since a subsequent loss would not be taxable the petitioner here would be in no better tax position in any event.

The Board's decision is predicated on the fact that the liability for the one-third share of its profits to Weinbach had definitely accrued as of December 31, 1919.

Examining the agreement between the petitioner herein and the employees, as embodied in the above-quoted resolution, it will be noted that it contains a provision to the effect that the employees shall share in the losses of the business. This provision is the only one in common with the contract between Weinbach and the petitioner as set out in the *Appeal of Block & Kohner Mercantile Co.,* *supra.* However, in addition to this provision, the above-quoted resolution provides that the employees are not entitled to withdraw, except as provided therein, any of the *contingent* compensation unless they shall remain with the petitioner for five years, and it is further provided that in the event of the discharge or withdrawal of any employee, all right, title, and interest in any of the contingent additional compensation shall revert to the petitioner.

By reason of the language employed in the resolution and from the conditions contained therein, the petitioner incurred no liability to the employees on December 31, 1919, by accruing on its books the contingent additional compensation pursuant to the resolution. There was no absolute liability on the part of the petitioner for any part of the contingent compensation until after the expiration of five years. The accrual on December 31, 1919, was merely a memorandum entry for the purpose of ultimately determining the liability, if any. The condition in the resolution to the effect that no employee shall at any time be entitled to withdraw any sums credited to him under the terms of the resolution unless he shall remain for five years in the employee of the petitioner, is clearly a condition precedent to the accrual of any liability.

A condition precedent is defined in Corpus Juris, vol. 13, p. 564, as follows:

*Conditions Precedent.*—A condition precedent in the law of contracts either may be a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises, and in this case may consist in performance of his promise by one of the parties or the happening of some other stipulated contingency. The question of whether stipulations in a contract constitute conditions precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissable aids to interpretation. * * *

Looking again to the above-quoted resolution, we note that the additional compensation which the petitioner seeks to deduct was termed "contingent compensation." Upon what was it contingent? The answer is obvious. Each of the employees named in the resolution must remain in the employ of the petitioner for five years. But, any one or all of them might be discharged, or might resign or might die within the period of five years. In such case, liability on the part of the petitioner did not and would not accrue. The resolution expressed a contract in form but it was not to become operative as a contract until the *happening of the contingency*.

In further support of its contention that it is entitled to the deduction of $116,548.88 from gross income for the year 1919, on account of the additional compensation accrued on its books as of December 31, 1919, the petitioner cites the case of *American National Co.* v. *United States*, 274 U. S. 99; 6 Am. Fed. Tax Rep. 6747; 47 S. Ct. 520, and urges that the decision therein concludes the issue in this appeal. We are of the opinion, however, that the cases are distinguishable.

In the case cited by the petitioner, the Supreme Court stated the facts to be as follows:

The findings of fact show that the Company, an Oklahoma corporation, had been engaged since 1908 in the business of making loans secured by mortgages upon real estate, which it negotiated and sold to investors. Under its usual course of business the borrower, upon the making of a loan, executed to the order of the Company his note for the amount loaned, due in five years, with interest at 5 per cent. per annum, payable semiannually; with the privilege of paying $100 or any multiple thereof on the principal, on or after two years, at the maturity of any interest payment. At the same time the borrower executed to the Company another note due in two years, without interest, for 10 per cent. of the total amount of the loan, as the Company's commission or compensation for making and negotiating the loan. From these commission notes the Company derived its income.

At first the Company negotiated and sold the loan notes to investors entirely through brokers or agents, to whom it paid fees or commissions. But from and after 1916 it sold many of these notes direct to investors; and being thus relieved from payment of these fees or commissions, and as an inducement to investors to purchase from it direct, agreed to pay them bonuses upon the notes as added consideration for the purchases; this being evidenced by a contract, styled a Guarantee, which the Company gave the investor, agreeing to pay him during the life of the loan, according to the terms of the note, 1 per cent. per annum of its amount, in addition to the 5 per cent. per annum that the borrower was to pay.

The Company consistently kept its books of account from year to year on an "accrual basis." Under the practice followed from the inception of its bonus method of doing business, whenever a loan note was sold it charged on its books, as an expense incurred in the sale, the aggregate amount of the payments called for in the bonus contract, computed at 1 per cent. per annum to the maturity of the note, and credited the investor on its books with a like

amount, in a subsidiary bills payable ledger. The total amount of this liability on the bonus contracts was carried on its general ledger under a control account called the Guarantee Fund Account.

In the year 1917, in accordance with this practice, the Company accrued and set up on its books as a liability and charged to expense, the aggregate amount of the payments called for in the bonus contracts given investors during that year. And it made its tax return for that year upon the basis upon which the accounts were kept, claiming as an expense the aggregate amount of these bonus contracts, as set up on its books. And as admitted in argument, although not shown specifically by the findings of fact, it also entered on its books and returned as income received during the year, the aggregate amount of the commission notes given by borrowers when it made the loans.

Furthermore, under the Company's practice, if any loan note was paid by the borrower before maturity, the difference between the amount of the bonus contract credited to the investor's account and the payments that had been made on the contract, was credited back to Profit and Loss, and treated as income of the Company for the year in which the note was paid.

The Commissioner of Internal Revenue disallowed the claim of the Company for the deduction of the total amount of the bonus contracts issued in 1917, and allowed the deduction only to the extent of the installments called for by such contracts which matured in 1917, and in accordance with this ruling made the additional assessment which is here involved.

In holding that the company was entitled to the deduction of the aggregate amount of the bonus contracts issued in 1917, the Supreme Court, in part, stated:

So, in the present case, we think that the amount of the bonus contracts was " an expense incurred and properly attributable " to the Company's process of earning income during the year 1917. These contracts were not analogous to obligations to pay interest on money borrowed, but were expenses incurred in selling the loan notes in as real a sense as if under its original system of doing business the Company had paid these amounts to brokers as fees for selling the loans or given them notes for such fees. The Company's net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes, the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission note was properly included in its gross income for the year—although not due and payable until the expiration of two years—so, under the doctrine of the *Anderson* Case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not " accrue " in that year in the sense of becoming then due and payable.

It becomes apparent, therefore, from an examination of the above statement, that the Supreme Court considered the liability on account of the bonus contracts to have become fixed in 1917. To be sure, liability for further payment on account of a bonus note might be defeated by the payment of the loan note at the expiration of two

years as provided in that note. But in all events, at the time of giving the bonus notes in 1917, there was a fixed and definite liability on the part of the company, subject to defeasance only by the subsequent action of the borrower.

In the instant appeal, as above stated, we are of the opinion that on December 31, 1919, there was no fixed liability on the part of the petitioner to pay any amount on account of the contingent additional compensation. The liability, if any, on the part of the petitioner depended entirely upon the happening of a specified contingency, namely, that each employee must remain in the employ of the petitioner for five years. We think that during the five years provided in the resolution of February 10, 1919, there was an inchoate or potential liability on the part of the petitioner, which at the expiration of that period became a fixed and definite liabilty for the payment of some amount of money to those employees named in the resolution who have been during the entire period in the petitioner's employ, provided, of course, that during the same period petitioner's business had been profitable.

We, therefore, approve the action of the respondent in disallowing the deduction of $116,548.88 from gross income for the year 1919 on account of additional compensation accrued on petitioner's books as of December 31, 1919.

The petitioner alleges that the respondent erred in failing to compute its profits tax for 1919 under the provisions of section 328 of the Revenue Act of 1918. It has not, however, presented any evidence showing abnormality of income or invested capital or that any other conditions prescribed in section 327 existed. The action of the respondent in regard thereto is approved. *Appeal of Edward Rose Co.*, 2 B. T. A. 341.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

STERNHAGEN, MILLIKEN, VAN FOSSAN, and MURDOCK dissent.

PHILLIPS, dissenting: I am of the opinion that the deduction claimed is allowable under the decisions of the Supreme Court in *United States v. Anderson*, 269 U. S. 422, and *American National Co. v. United States*, 274 U. S. 99; 6 Am. Fed. Tax Rep. 6747; 47 S. Ct. 520. I am further impelled to this conclusion by my opinion that if the amount claimed (which is admittedly an ordinary and necessary expense of the business and deductible in some year as such) is ever to be allowed, it must be as an expense of conducting the business for the year in question.

It seems that at the end of the year the employees had done everything required of them to earn the compensation in question. Subject to certain contingencies under which these employees might lose the right to demand payment, the petitioner was obligated to the employees for the amount in question. The contingencies affected the payment, not the accrual of the liability; as to payment, these contingencies may be conditions precedent, but in my opinion the liability accrued in the taxable year subject only to certain conditions subsequent under which it might be wiped out.

I appreciate that difficulties are involved in the acceptance of this view in determining the course to be followed in computing income for subsequent years should this liability be canceled in such subsequent years by losses of the business or termination of the employment. The agreement of the employees that this compensation should be subject to diminution by subsequent losses may properly be treated as a sharing of such losses of the petitioner by the employees, and to the extent that such losses are borne by the employees, the petitioner is compensated and to that extent does not sustain the full loss of such subsequent year.

The effect upon income of a discharge or withdrawal of the employees within five years is not so clear. Whether income would be realized from an act by which the amount theretofore earned by the employee was to "revert to this corporation" (to use the words of the resolution) is not before us. It appears, however, that in *American National Co.* v. *United States, supra,* the court allowed a deduction for the full amount contracted to be paid over a period of years, although it appeared that such amount might be reduced prior to the date of payment. In that case the taxpayer had treated the amount of his reduced liability as income in the year of such reduction. While the court does not comment on this situation, it does state that the method which was adopted clearly reflected the true income, thereby implying that a change in the liability must, by reason of the method of accounting followed by the taxpayer, be accounted for as income.

In the case before us it will scarcely be contended that the financial condition of the petitioner could have been reflected without showing the liability to its employees and in my opinion its true net income for the year could not be computed without allowing the deduction claimed. For these reasons I dissent from the conclusion reached.

MORRIS concurs in the dissenting opinion.