COLUMBIAN CARBON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42743.  Promulgated February 4, 1932.

*Harry J. Gerrity, Esq.,* for the petitioner.

*Bruce A. Low, Esq.,* and *F. L. Van Haaften, Esq.,* for the respondent.

460

462

OPINION.

TRAMMELL: Three issues were raised by the pleadings in this case, of which two were subsequently abandoned by the petitioner without objection by the respondent. The facts set out in our findings hereinabove were stipulated by parties under Rule 38, and the case was submitted on briefs without hearing.

The issue remaining for decision concerns the correct amount of the credit to which the petitioner is entitled on account of British income and war-loan taxes accrued in the taxable year 1920, and being the credit allowable under the Revenue Act of 1918, which provides:

SEC. 238. (a) That in the case of a domestic corporation the total taxes imposed for the taxable year by this title and by Title III shall be credited with the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possessions of the United States.

And section 200 of the same act provides that:

The term "paid" for the purposes of the deductions and credits under this title, means "paid or accrued" or "paid or incurred," and the terms "paid or incurred" and "paid or accrued" shall be construed according to the method of accounting upon the basis of which the net income is computed under section 212.

The petitioner herein is a domestic corporation, organized under the laws of West Virginia, and its subsidiary, the L. Martin Company, is also a domestic corporation, organized under the laws of New Jersey.

At all times pertinent herein, the books of the petitioner and of its subsidiary were regularly kept on the accrual basis, and for the taxable year a consolidated return was filed on the basis of an annual accounting period consisting of the calendar year. Pursuant to the above quoted statute, the petitioner is, therefore, entitled to a credit in the amount of any British income taxes *incurred or accrued* in the calendar year 1920.

The petitioner's subsidiary owned and operated a branch factory in England, and under the laws of Great Britain was liable for and paid income and war-loan taxes, corporation profits taxes and excess-profits duty to the Government of Great Britain. Such taxes were accrued on the books of the subsidiary *for* the calendar year 1920 in the total amount of $46,616.20 and claimed by the petitioner as a credit under section 238 (a), *supra.* Of the amount of the credit claimed, respondent allowed $40,867.61 and disallowed $5,748.59. The amount disallowed represents British taxes as follows:

| | | |
|---|---|---|
| (1) Income taxes | | $5, 152. 26 |
| (2) War-loan taxes | | 592. 17 |
| (3) Excess-profits duty | | 4. 16 |
| Total | | 5, 748. 59 |

The three items comprising the total net amount of the credit claimed by the petitioner and disallowed by the respondent will be considered separately in the order above set out.

(1) *Credit for British income taxes.*—The petitioner's subsidiary accrued on its books *for* 1920 (as distinguished from accruals in or during 1920) on account of British income taxes, the amount of $6,779.99, and claimed this amount as a credit. The respondent disallowed the entire amount so claimed on the ground that liability to pay the particular taxes embraced therein was not *incurred* in or during the calendar year 1920. The respondent then computed the amount of the British income taxes which he determined *accrued* in 1920, and allowed credit on that account in the amount of $1,627.73. The net result of this action of the respondent was to allow as a credit on account of British income taxes an amount less than that claimed by the petitioner to the extent of $5,152.26.

There is no controversy between the parties respecting the nature of the tax in question, nor the amounts and dates of payment. The sole question on this point is, when did the British income tax accrue?—that is to say, when was liability to pay the tax incurred?

The petitioner contends that the tax accrued on or subsequent to April 6, 1920, and prior to December 31, 1920. While the tax in question was paid by a subsidiary of the petitioner, with which it filed a consolidated return, the tax on a consolidated basis is to be computed as a unit, and, in order to determine the tax liability of petitioner on a consolidated basis, we must determine the amount of credits for foreign taxes paid or accrued by its subsidiary. The credit claimed consists of amounts accrued on the books of petitioner's subsidiary in the following manner:

That part of the tax for the British year of assessment beginning April 6, 1919, and ending April 5, 1920, which bears the same ratio to the total tax for said year as the number of days in said British year falling within the calendar year 1920 bears to the whole year, was apportioned to the calendar year 1920 and accrued as tax for said year. On the petitioner's theory, this tax accrued in 1919 on or subsequent to April 6 and prior to December 31. Likewise, the petitioner in making its return accrued *for* the year 1920 on the same basis a proportionate part of the tax for the British year of assessment beginning April 6, 1920, and ending April 5, 1921, notwithstanding that the entire amount of this tax, under its contention, accrued *in* 1920. Obviously, the amounts thus accrued on the books of the petitioner's subsidiary and claimed by it as a credit are inconsistent with its present contention that the correct amount of the credit to which it is entitled is the entire amount of tax for the British year of assessment beginning April 6, 1920, and which it contends accrued in 1920 on or after April 6 and prior to December 31.

On the other hand, the respondent reached the conclusion that, since the English tax was computed on the basis of the average income for the three-year period ending on that day of the year, immediately preceding the British year of assessment, upon which the accounts of the taxpayer had been usually made up, which in this case was December 31, the British tax accrued on that date. Thus, the first item of tax accrued on the books of the petitioner's subsidiary *for* 1920, being a portion of the tax for the British year of assessment beginning April 6, 1919, was computed on the basis of the average income for 1916, 1917 and 1918. This tax the respondent concluded accrued on December 31, 1918. The second item accrued on the books of the subsidiary was for a portion of the tax for the British year of assessment beginning April 6, 1920, and was computed on the average income for 1917, 1918 and 1919. This tax respondent concluded accrued on December 31 of the last mentioned year. Hence, the respondent disallowed these amounts, but allowed a credit in the amount of the whole tax for the British year of assess-

ment beginning April 6, 1921, which was computed on the average income for the years 1918, 1919 and 1920. The respondent's determination in this respect, we think, is erroneous.

The question here presented is governed by the laws of England, a foreign country, and such laws do not prove themselves, but must be proved as facts. *W. J. Burns et al.*, 12 B. T. A. 1209, 1224. Hence, the parties have attached to and made a part of their stipulation certain English statutes, the pertinent parts of which we have set out in our findings of fact. Our decision must, therefore, be based on the statutes so established.

The British tax in question, under the statutes mentioned, was imposed for a taxable year " commencing on the sixth day of April and ending on the following fifth day of April," designated as the " year of assessment." The statute further provided that, " The tax  *  *  *  shall be computed on the full amount of the balance of profits or gains upon a fair and just average of three years ending on that day of the year immediately preceding the year of assessment on which the accounts of the said trade have been usually made up, or on the fifth day of April preceding the year of assessment." In other words, the amount of the tax imposed for any " year of assessment " was computed upon the basis of the average profits of the three-year period ending on the day upon which the accounts had been usually made up immediately preceding the year of assessment, or on the average profits of the three-year period ending on the fifth day of April immediately preceding the year of assessment, regardless of the amount of profits, gains or income arising in the year of assessment.

The British Finance Act of 1926 (section 22) made this plain and was passed to clarify the situation after the decisions of the House of Lords in the cases of *Brown* v. *National Provident Institution*, 2 Appeal Cases 222; 8 Tax Cases 57, 100 (House of Lords, 1921) ; and *Whelan* v. *Henning*, Appeal Cases (House of Lords 1926), page 293, to which further reference will be made.

The above mentioned British Finance Act provided that " The foregoing provisions of this section shall be deemed always to have had effect  *  *  *"  in so far as the kind of income here involved is concerned.

Conceding, then, as both parties to this proceeding apparently agree, that the average profits of the three-year period immediately preceding the year of assessment is the amount on which the tax for the year of assessment is to be computed and assessed, the question is, When did the tax for such year of assessment accrue? When did the tax liability for the year of assessment arise? Was there any liability incurred prior to the beginning of the year of

assessment or after the end of such year? We do not think that the time when the assessment was to be made or the time when the tax was required to be paid is controlling. Our consideration concerns only the time when the liability was incurred or accrued.

Items of income accrue when the income has been definitely earned, or the right to receive it has definitely arisen, and, on the same principle, a liability accrues when the obligation is definitely incurred. This is true without regard to when the obligation is to be liquidated. In *H. H. Brown Co.*, 8 B. T. A. 112, 117, we said:

The basic idea under the accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned without regard to whether payment has been made or whether payment is due. Expenses incurred in the operations for a particular year are properly accrued in the accounts for that year, although payment may not be due until the following year. * * * the accrual system wholly disregards due dates. Neither is it necessary that the amount of an incurred liability be accurately ascertained in order to accrue it.

On the latter point, see *Ernest M. Bull, Executor*, 7 B. T. A. 993.

There can be no such thing as the accrual of a conditional or contingent liability. Liability is either incurred or it is not incurred. So long as the question of liability is contingent, no liability has been definitely incurred, and until definitely incurred it can not be said to have accrued. *Edwards* v. *Keith*, 231 Fed. 110 (certiorari denied, 243 U. S. 638); *S. Naitove & Co.* v. *Commissioner*, 32 Fed. (2d) 949 (affirming 8 B. T. A. 589); *Highland Milk Condensing Co.* v. *Philips*, 34 Fed. (2d) 777 (certiorari denied, 280 U. S. 608); *Vang* v. *Lewellyn*, 35 Fed. (2d) 283. See also *United States* v. *Anderson*, 269 U. S. 422; *American National Co.* v. *United States*, 274 U. S. 99.

*Edwards* v. *Keith, supra,* was an action brought to recover a part of the income tax for 1913 paid by the plaintiff, Edwards, who was an insurance agent employed to procure applications for assurance on the lives of individuals. As compensation for his services, the insurance company was obligated to pay him a certain commission on the first premium paid by the assured when the policy was issued. It was further obligated, as the assured paid subsequent renewal premiums, to pay him stated commissions on each. The issue involved concerned the question of accrual of the commissions on the renewal premiums, the plaintiff contending that the entire amount of the commissions accrued at the time the policy was issued. The court rejected this contention, and held that there could be no accrual of a liability which depended upon the happening of subsequent events, saying:

It may be noted that, although fully earned by work already done, there is no certainty that the sum conditionally promised for an ensuing year will ever be paid or will accrue or come due; John Doe (the assured) may die within

the first year, or at its expiration may refuse to renew his policy, in which event the company is not obligated to pay its agent anything beyond the amount already paid him; the obligation to pay does not arise until John Doe actually pays his renewal premium in cash.

In *S. Naitove & Co.* v. *Commissioner, supra,* the taxpayer corporation, keeping its books by the accrual method, entered into an agreement with certain employees whereby it agreed to pay each employee as contingent compensation a percentage of the net profits for the year 1919, subject, however, to the condition that no employee should be entitled to withdraw any amount credited to him pursuant to the agreement except upon consent of the president of the corporation, unless he should remain in the employ of the corporation for a period of five years, and subject to the further condition that during the period of five years the amounts credited to each employee should remain in and at the risk of the business. The court held that the amounts so credited did not constitute income to the employee nor liabilities to the corporation until they became finally payable. The court said:

Construing the provisions of the income tax law here involved, we are of the opinion that under the accrual system of accounting income may be said to be accrued when it is definitely received, and that likewise liabilities or expenses will be considered to have accrued only when the events have occurred from which liability or expense can be determined and fixed, even though payment is not yet due. [Citing *United States* v. *Anderson, supra,* and *American National Co.* v. *United States, supra.*]

After discussing the case of *Edwards* v. *Keith, supra,* the court, in its opinion in the *Naitove* case, said:

The decision of the court in the above case is conclusive, we think, to the effect that in a unilateral or conditional contract, as the one here involved, the liability incurred is not to be deducted as expense until it has become fixed and determined, and it is then deductible as of the year when the event occurs—in the instant case, at the expiration of the five-year period.

In *Highland Milk Condensing Co.* v. *Philips, supra,* the taxpayer sold goods in 1917, for which it received invoice prices with the understanding that the purchasers would be insured against loss by subsequent decline in market price. In 1918 declines occurred, and in that year the taxpayer corporation made payments to prior purchasers on that account. The court held that the payments made in the subsequent year did not constitute allowable deductions from income for 1917, because prior to 1918 the liability was contingent; in that year the events occurred which fixed and determined the liability, which thereupon accrued.

In *Vang* v. *Lewellyn, supra,* the court applied the same principle in holding that certain reserves for contingent liabilities were not deductible in the year when set up for the reason that the liability

was not definitely incurred in such year. The plaintiff in that case was a road construction company, which, under its contracts, was required at its own expense to maintain the roads constructed by it free of defects arising from materials or construction for a period of five years after completion. The company estimated the probable maintenance costs and set aside a reserve to cover them, which it sought to deduct in computing the profit made on each contract. In its opinion, the court said:

> The company's engagement to maintain the work in good condition for five years after completion as a pledge of its workmanship was clearly a contingent liability which might or might not cost money—it occurred in only 3 out of every 12.5 jobs—and, accordingly, might or might not reduce the net income from a contract closed by final payment long before. * * *
>
> Nor does the fact that the company kept its books on the accrual basis help it, for, however, looked at, the liability for maintenance was contingent upon the need of maintenance. When books are kept on an accrual basis, a liability must be fixed either in terms or by the occurrence of events from which it is determined before it can be deducted.

The foregoing principle was sanctioned and applied by the Supreme Court in *Lucas* v. *American Code Co.*, 280 U. S. 445, where it was held that a loss by reason of breach of contract by a corporation keeping its books on the accrual basis, as determined by final judgment several years subsequent to the year in which the breach occurred, was not deductible as of the year of the breach. The court said:

> It may be assumed that, since the company kept its books on the accrual basis, the mere fact that the exact amount of the liability had not been definitely fixed in 1918 would not prevent the deduction, as a loss of that year, of the amount later paid. But here there are other obstacles. Obviously, the mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss. * * *
>
> The prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as deductions.

Cf. also *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115; *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92.

The case of *Stuart W. Webb*, 5 B. T. A. 366, involved the question as to when the Massachusetts income tax was accrued. That law of Massachusetts provided, " The return shall be made on or before the 1st day of March in each year and shall relate to the income received during the calendar year ending on the preceding 31st day of December. * * * Every person who is an inhabitant of the Commonwealth at any time between the 1st day of January and the 30th day of June, both inclusive, in any year, shall be subject to the taxes imposed by this Act." We said:

Under the foregoing provisions of the statute, an individual taxpayer is not liable for the tax until he has been an inhabitant of the Commonwealth during some portion of the first six months of the year following the year in which the income was earned. This condition must occur before any liability for the tax comes into existence. At the close of December 31 in any year, there is no liability for the tax. In the opinion of the Board, the Massachusetts income is a tax for the year in which it is assessed and becomes payable, in this case, for the year 1920, and is measured by the income for the preceding year.

Of course in that case all events had occurred at December 31 which fixed the amount of the tax, except the liability to pay any tax at all. This is the same in principle as the case at bar. All the events had occurred on December 31, 1919, which fixed the amount of the tax, but the year of assessment had not arrived, and if it had never arrived on account of the taxpayer having ceased to possess the source of income, there would have been no tax for the 1920 year of assessment.

*United States* v. *Anderson, supra,* involved a tax on the profits derived from the sale of munitions manufactured and sold in 1916, but the tax was not assessed nor paid until 1917. In that case the court laid down the principle that where all the events occur in the taxable year *which fix the amount of the tax and determine the liability of the taxpayer to pay it,* the liability accrues in that year, although the tax may not be assessed or become payable until the following year. In its opinion the court said:

The appellee's true income for the year 1916 could not have been determined without deducting from its gross income for the year the total cost and expenses attributable to the production of that income during the year. The reserve for munitions taxes set up on its books for 1916 must have been deducted from receivables for munitions sold in that year before the net results of the operations for the year could be ascertained. * * * In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.

Bearing in mind the application of the principles of accrual as illustrated by the cases hereinabove referred to, the instant case on the facts is readily distinguishable from the *Anderson* case, but the principles of law as to accrual set forth in that case are the principles on which we base our decision in this case. The *Anderson* case involved a munitions tax levied *for* the year 1916. Being a tax levied *for* the calendar year 1916, certainly no liability to tax could arise prior to the beginning of that taxable year. But liability was not incurred on the first day of the taxable year for the reason that the amount of the tax, like our income tax, was measured by the profits and gains of the year *for* which it was imposed. Thus, all the events which fixed the amount of the tax had not occurred until the last day of the taxable year. However, on that date not only

had all the events occurred which fixed the amount of the tax, but, the tax being imposed *for* that year, the liability of the taxpayer to pay the tax was determined. The liability to pay the tax was then incurred, regardless of when it was due and payable. The liability had accrued. It is immaterial that the tax was not assessed or paid until the following year.

A wholly different situation appears in respect of the English income tax. This tax was levied *for* a definite " year of assessment " just as our munitions tax and income tax were levied for a definite taxable year. No liability on account of the tax could, therefore, be incurred prior to the beginning of the " year of assessment." The British tax was computed and assessed on the basis of the average gains and profits of the three-year period preceding the year of assessment. On the last day of such preceding three-year period all the events had occurred which fixed the amount of the tax, but this alone was not sufficient to constitute an accrual of liability. In addition to the occurrence of the events which fixed the amount of the tax, there must also have occurred all the events which determined the liability of the taxpayer to pay it. At the end of the prior three-year period, the year of assessment *for* which the tax was imposed had not yet arrived, hence, prior to the first day of the year of assessment the event had not occurred which determined the liability of the taxpayer to pay the tax. On the first day of the British year of assessment all the events had then occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay the tax. On that date the liability was incurred or accrued.

As hereinabove pointed out, the British income tax under the 1918 Act was imposed upon the basis of an annual period, designated as the " year of assessment," commencing on the sixth day of April and ending on the following fifth day of April, but measured by income of preceding years. Throughout the British Income Tax Act the tax is referred to as a charge " for " the year of assessment. In section 1 of Part I, it is stated that " where any Act enacts that income tax shall be charged *for* any year at any rate, the tax at that rate shall be charged *for* that year * * *," and, in section 2, that " Every assessment and charge to tax shall be made *for* the year commencing on the sixth day of April and ending on the following fifth day of April * * *." (Italics supplied.)

Whatever income the tax may have been laid upon, as distinguished from measured by, it was a tax imposed *for* the respective years of assessment, and this being true, it would seem to be self-evident that if a taxpayer discontinue business prior to the beginning of the year of assessment no tax liability for that year would or

could have been incurred. This conclusion is supported by the decision in *Whelan* v. *Henning*, *supra*, where it was stated:

The Acts themselves say nothing about the existence or nonexistence of sources. But the returns and assessments are made in advance. The measure of the amount is to be found in the result of previous years and their average. How then is it to be decided whether or not a return and assessment are to be made for the current year? The question in nine cases out of ten arises under Case I. or Case II. in respect of trades and professions, and it became a commonplace among those dealing with income tax that if the trade or profession had been discontinued (a matter determinable at the beginning of the year) the liability to make a return and be assessed ceased.

This interpretation of the English law was also given by the Board of Inland Revenue in a letter dated September 25, 1929, reading as follows:

With reference to your letter of the 11th instant, I am directed by the Board of Inland Revenue to inform you that in the case of a trading concern or company dissolving and discontinuing its business on 31st December, 1918, there would not be any liability to income tax for the year 1919–20, commencing 6th April, 1919. Liability for assessment to income tax for any year in respect of business profits arises normally only where a concern is in existence during that income tax year.

In addition to the point that where a taxpayer discontinued business prior to the beginning of the tax year or year of assessment no tax liability for such year was incurred, it was decided by the House of Lords in *Brown* v. *National Provident Institution*, *supra*, and in *Whelan* v. *Henning*, *supra*, that the tax was intended to be on the profits and gains forming income in the year of assessment although not measured by the income of that year, and that if in the year of assessment no income was derived, no tax could be levied or collected in respect of a nonexistent income. These decisions gave rise to the enactment of those provisions of the British Finance Act of 1926, to the effect that notwithstanding no profits or gains arose for or within the year of assessment, income tax computed by reference to the amount of profits or gains of the period preceding the year of assessment should nevertheless be charged for that year. However, the 1926 Finance Act did not change the rule that where the taxpayer discontinued business prior to the beginning of the year of assessment no liability to tax for such year was incurred.

Applying the principles of accrual hereinabove discussed, in the light of the English statutes and decisions mentioned, leads us to the conclusion that liability under the British Income Tax Act of 1918 was incurred on the first day of each year of assessment, and not prior or subsequent thereto. Prior to such date it could not be known that the taxpayer would be in operation of the business on the first day of the year of assessment, and if the business had been discontinued prior thereto, no liability would have been incurred.

Prior to the first day of the year of assessment, the liability to tax was not even conditional or contingent. No liability had been imposed. The liability was wholly *in futuro*, merely a prospective or anticipated liability. Whether any liability would in fact ever be incurred depended upon a future event which might or might not occur, namely, the continuance of the business until the first day of the year of assessment. If the business was continued until the first day of the year of assessment, the taxpayer then and there became liable to tax for such year, the amount to be computed in the specified manner on the basis of the profits of a prior period. While the tax so computed was subject in certain contingencies to subsequent readjustment and possible reduction of the amount, the liability was definitely incurred on the first day of each year of assessment on the basis of a statutory income, and, as we have hereinbefore pointed out, under such circumstances, became accrued.

It may be contended that since the amount of the British tax in this case, which was to be assessed for the year of assessment 1920–1921, was definitely known on December 31, 1919, the end of the three-year period immediately preceding that year of assessment, it should at that time be accrued. But the fact is that while the amount could then be ascertained, if there would be any liability at all to pay a tax for that year of assessment, no liability actually arose until the year of assessment arrived. Even if the taxpayer had definitely known that it would be in business in the year of assessment, it would not change a *future* ascertained liability into a *present* liability. Only a liability actually incurred can be accrued, not one which, it may be known, will be incurred in the future.

From the foregoing it follows that the British income tax assessed against the petitioner's subsidiary for the year of assessment beginning April 6, 1920, is the only tax shown by the facts before us which accrued in the calendar year 1920. The amount of that tax, as stipulated by the parties and found by us, was $7,517.06. This amount was subsequently paid by the petitioner's subsidiary and no part thereof has been refunded by the British Government. Under section 238 (a) of the Revenue Act of 1918, *supra*, the petitioner is therefore entitled to have said amount applied as a credit against the deficiency asserted by the respondent. It may be contended that at the beginning of the year of assessment it could not be definitely known that the corporation would be in business during the entire year of assessment, and that, therefore, until the year had elapsed, no definite amount of liability had been incurred. The fact is, however, that on the first day of the year of assessment the liability for the tax arose measured by factors then known. If the taxpayer during the taxable year had ceased to possess the source of income, that is, had gone out of business, a refund or adjustment of the fixed

tax liability might be allowed, but this does not mean that no liability had been incurred to pay the tax determined by the average of the income of the three preceding years. The taxpayer had three months after the end of the year of assessment to make claim for adjustment or refund if it ceased to do business during the year, but this does not alter the fact that the liability had actually been incurred on the first day of the year of assessment. When a liability has been incurred during a taxable year, a taxpayer is entitled to a deduction thereof if on an accrual basis. An incurred liability may in some future years be adjusted, increased or decreased as to amount, but such a possibility does not deprive a taxpayer of the right to accrue and deduct a liability in the year when incurred. Such a possibility was contemplated by section 238 (a) of the 1918 Act quoted above. This section provides that if accrued taxes paid differ from the amounts claimed as credits, or if any tax paid is refunded in whole or in part, the Commissioner shall redetermine the amount of taxes due on account thereof.

(2) *Credit for British war-loan taxes.* British war-loan taxes were paid on behalf of the petitioner's subsidiary for the year 1920 in an amount equivalent to $592.17. These taxes were all paid during the calendar year 1920, being withheld or deducted at the source, and were levied on interest on 5 per cent national war bonds of the British Government. The subsidiary was actually charged with and paid the amount of tax, and the total amount of the interest on which such tax was paid was included in its gross income for the year 1920. Respondent allowed the amount of the tax as a deduction from income for 1920, but not as a credit, as claimed by the petitioner. In the stipulation of the parties, the respondent concedes that if this tax is an income tax, within the meaning of section 238, *supra*, the amount is allowable as a credit for foreign taxes for 1920.

The basis of the respondent's action is not disclosed by the record. In the deficiency letter it is merely stated: " The British war loan taxes do not constitute a credit against the taxes due and payable but they are allowed as a deduction from income." The respondent makes no reference to this point in his brief, and apparently is not pressing his position. However that may be, it is our opinion that the tax in question is in the nature of an income tax and constitutes a credit under the provisions of section 238 of the Revenue Act of 1918. Interest, whether derived from a loan to the government evidenced by war-loan bonds, or from any other kind of public or private loan, constitutes income as that term is ordinarily understood, and a tax levied thereon is essentially an income tax. The respondent's action on this point is reversed.

(3) *Excess-profits duty.* In the stipulation signed by the parties, the respondent confesses error in not allowing the amount of $4.16 as a credit for British excess-profits duty paid on March 14, 1921, for the assessment period July 1, 1919, to June 30, 1920. No facts were stipulated in this connection. We have only the statement that the respondent confesses error. In the absence of any showing that the confession of error is not well founded, effect will be given thereto in recomputing the deficiency.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MATTHEWS did not participate in the consideration of or decision in this report.

———

STERNHAGEN, dissenting: In my opinion, the British tax accrued at the close of the preceding calendar year, the income of which year measured the amount of this taxpayer's British assessment. The essentials as to this question are the same as those in *United States* v. *Anderson*, 269 U. S. 422. See *Ernest M. Bull, Executor*, 7 B. T. A. 993.

MORRIS agrees with the above dissent.

———

MURDOCK, dissenting: I think the deduction for British income tax should be allowed in the amounts actually accrued in each calendar year by the L. Martin Company. In this way a proper portion of the tax for each British tax year is offset against the income of the company's income-computing year and the tax is not accrued before the liability is fixed.

SMITH agrees with the above dissent.