962

UNIVERSAL WINDING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87354.   Promulgated May 23, 1939.

*W. Sidney Felton, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The petitioner claimed credit for accrued taxes payable to the United Kingdom of Great Britain under section 131 of the Revenue Act of 1932.[1] The agreed amount of such taxes, if credit therefor is allowable, is $12,557.89.

---

[1] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

*          *          *          *          *          *          *

(b) LIMIT ON CREDIT.—The amount of the credit taken under this section shall be subject to each of the following limitations:

(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his entire net income for the same taxable year; and

(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year.

*          *          *          *          *          *          *

(d) YEAR IN WHICH CREDIT TAKEN.—The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c) of this section. If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken upon the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

*          *          *          *          *          *          *

The respondent has disallowed such credit and has based his action on the decision of the Board in *Columbian Carbon Co.*, 25 B. T. A. 456. He determined that April 6, 1935, was the date of accrual under the British law. In his brief he relies also on G. C. M. 10613, C. B. XI-1, page 173, which applies the principle set forth in the *Columbian Carbon Co.* case to the Revenue Acts of 1924 and 1926.

In *Columbian Carbon Co.*, *supra*, the Board had before it British taxes imposed by the British Income Tax Act, 1918, and attempted to be accrued by the petitioner in 1920.

After an exhaustive discussion of the question of accrual as laid down in *United States* v. *Anderson*, 269 U. S. 422, and as applied to the situation there before us, we held that not all of the events had occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay it, specifically that the contingency that the taxpayer might not be in business on the first day of the assessment year, April 6, and, hence, liable to no tax, prevented accrual until that date. The principle that those discontinuing business prior to the year of assessment so escaped liability for tax had been established in the decisions of the House of Lords in *Brown* v. *National Provident Institution*, 2 Appeal Cases, 222; 8 Tax Cases 57, 100 (House of Lords, 1921); and *Whelan* v. *Henning*, Appeal Cases, 293 (House of Lords, 1926).

In the *Columbian Carbon Co.* case, after referring to these decisions and discussing their effect, we observed:

\* \* \* However, the 1926 Finance Act did not change the rule that where the taxpayer discontinued business prior to the beginning of the year of assessment no liability to tax for such year was incurred.

The record in the *Columbian Carbon Co.* case refers only to section 22 of the British Finance Act, 1926, and does not indicate that sections 31.–(1) (a), 34.–(1) and 35.–(1) and (2) of that act were considered by the Board. Had those sections been called to the Board's attention and their full import appreciated, the Board would not have volunteered the observation that the Finance Act, 1926, did not change the rule that where the taxpayer discontinued business prior to the year of assessment, no liability for tax for such year was incurred. This statement was clearly in error.

A careful reading and study of these various sections of the Finance Act, 1926, in view of the previous decisions of the House of Lords under the Income Tax Act, 1918, demonstrate that the Finance Act, 1926, accomplished the following changes in the British income tax law:

(1) It abolished the three-year average profit provision and substituted the full amount of profits or gains or income of the year preceding assessment.

(2) It made the taxpayer subject to tax even if he made no profit or had no gains during the year of assessment.

(3) If the taxpayer discontinued business, it rendered him liable for all income taxes chargeable to him whether his accounting period was concurrent with or different from the "year of assessment", April 6 to April 5.

Our conclusions in the above respects are fully supported by the observations of the authors of "Income Tax Law, Practice and Administration", by Sharles, Croom-Johnson, Graham-Dixon, and Eccott, a recognized authority on British income tax, in which we find the following pertinent references:

The Finance Act, 1926, was an exceedingly important one, inasmuch as it entirely altered the basis of assessment under Schedule D from the average profits of the preceding three years to the profits of the preceding year. [Vol. I, p. 4.]

Discontinued Businesses. For the year in which the business is discontinued, the assessment is based on the actual profits, from the 6th of April of that year to the date of discontinuance * * *. [Id., p. 8.]

Basis of Assessment. Profits, adjusted according to the Rules, of the year preceding the year of assessment * * *. [Id., p. 8.]

Profits of Trade. * * * the assessment is based on the profits of the accounting year which ends in the calendar year immediately preceding the year of assessment * * *. [Id., p. 10.]

It is provided that where income tax is computed on profits [other than those in the regular Schedules] of a previous period it is to be charged though there are no profits in the year of assessment. [Id., p. 133.]

Under the Income Tax Act, 1918, before the amendments of F. A., 1926, a person might have been assessed, say, in 1924 on the average of the profits of 1921, 1922, and 1923 at £2000. But 1924 itself might have been a bumper year, producing £10,000, and it might have paid him to retire on fifth April, 1925, because the £10,000 had not come into the average. Now under the Act of 1926 he has to pay on the last penny that he makes. [Id., p. 136.]

The respondent admits that the case of *Wesley* v. *Manson*, Appeal Cases, 635 (House of Lords, 1932), is "persuasive that a taxpayer does not avoid tax liability by ceasing to engage in a business if the end of its fiscal year be prior to the British Government's next assessment year."

In that case the taxpayer, who had sold his business July 2, 1928, argued that the tax on his profits and gains for the year ended April 5, 1928, should be computed on his accounts for his fiscal year ended June 30, 1927, while the Crown contended that the actual profits for that year were based on his profits for his fiscal year ended June 30, 1928, properly apportioned by section 35.

The court upheld the contention of the Crown. The result of the decision was to make the taxpayer subject to a tax on all his profits up to the time of the sale of his business.

Applying these conclusions to the case at bar, we find that all the events which fixed the amount of the tax and determined the liability

of the taxpayer to pay it had occurred on June 30, 1934, and taxes accrued on that date.

It follows that the credit of $12,557.89 is allowable to the petitioner under the provisions of section 131.

*Decision will be entered under Rule 50.*